## EXPEDITO DUARTE *vs.* COMMISSIONER OF REVENUE.

Suffolk. January 8, 2008. - May 14, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Tobacco. Commissioner of Revenue. Taxation,* Commissioner of revenue, Cigarette tax. *Administrative Law,* Substantial evidence, Regulations. *Regulation. Due Process of Law,* Adjudicatory proceeding, Notice.

Overview of the Massachusetts cigarette pricing laws, G. L. c. 64C, §§ 12-21, and their supplementing regulation, 830 Code Mass. Regs. § 64C.14.1 (1993). [400-403]

This court concluded that 830 Code Mass. Regs. § 64C.14.1 (1993), which provides that no retailer licensed to sell cigarettes "shall advertise, offer to sell, or sell cigarettes at a price that is less than the applicable presumptive cost" as periodically established by the Commissioner of Revenue, was not inconsistent with the statutory framework established in the cigarette pricing laws, G. L. c. 64C, §§ 12-21, and did not constitute prohibited price-fixing. [408-410]

The Commissioner of Revenue (commissioner) erred in suspending a retailer's license to sell cigarettes on the ground that the retailer had sold or advertised cigarettes below the retailer's presumptive cost without prior approval to do so, where the suspension hearing process failed to provide the retailer with the due process to which he was entitled under the statutory framework of G. L. c. 64C, §§ 12-21 [410-413], and where the retailer presented sufficient evidence at a later hearing before the Appellate Tax Board to support a conclusion that he had acted in good faith to meet the prices charged by his local competitors [414-415].

The Appellate Tax Board (board), while acting under the authority granted by G. L. c. 62C, § 68, to hear an appeal from the decision of the Commissioner of Revenue (commissioner) to suspend a license to sell cigarettes, lacked authority to declare a regulation promulgated by the commissioner to be facially invalid and of no legal effect, although the board could permissibly find that the regulation's application in a case before the board was violative of due process or inconsistent with the applicable statutory purpose. [413-414]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth W. Salinger,* Assistant Attorney General, for the defendant.

*Carlin J. Phillips* (*Joseph P. Fingliss, Jr.*, with him) for the plaintiff.

*J. Thomas Price* & *Daniel P. Paradis*, for Northeast Association of Wholesale Distributors & another, amici curiae, submitted a brief.

*Daniel B. Winslow* & *Ben N. Kuruvilla*, for Retailers Association of Massachusetts & another, amici curiae, submitted a brief.

CORDY, J. The Commissioner of Revenue (commissioner) appeals from an Appellate Tax Board (board) decision vacating the suspension of a retailer's license to sell cigarettes and declaring the "Fair Pricing of Cigarettes" regulation, 830 Code Mass. Regs. § 64C.14.1 (1993) (§ 64C.14.1), "invalid on its face as inconsistent with the provisions of G. L. c. 64C and the decision of the Supreme Judicial Court in *Commissioner of Corps. & Taxation* v. *Ryan*, 323 Mass. 154 (1948)." We affirm the board's decision vacating the retailer's suspension, albeit on different grounds. We also conclude that the board did not have the authority to declare the regulation in question invalid.

1. *Background.* a. *Prohibition on below-cost cigarette sales.* An overview of the Massachusetts cigarette pricing laws, G. L. c. 64C, §§ 12-21, and their implementing regulation, § 64C.14.1, is necessary to an understanding of the underlying dispute.

It is unlawful for a retailer to sell or advertise cigarettes at prices below its cost, "with intent to injure competitors [or to] destroy substantially or lessen competition." G. L. c. 64C, § 14 (*a*).[1] Evidence that a retailer has advertised or sold cigarettes at less than cost is "prima facie evidence of intent to injure competitors." G. L. c. 64C, § 14 (*b*).[2] General Laws c. 64C, § 13 (*a*), defines "cost to the retailer" as "the invoice cost of the cigarettes to the retailer . . . to which shall be added the cost of doing business by said retailer." *Id.* "In the absence of proof of a lesser or higher cost," the "cost of doing business" of the

---

[1] The stated purpose of the law is to prevent retailers or wholesalers from selling cigarettes as "loss-leaders" and thereby "destroy[ing] competition." G. L. c. 64C, § 12.

[2] This law is patterned on the more general Unfair Sales Act, which proscribes below-cost sales of "any item of merchandise." G. L. c. 93, § 14F. See G. L. c. 93, §§ 14E-14K.

retailer is presumed to be "twenty-five per centum of the invoice cost of the cigarettes to the retailer," G. L. c. 64C, § 13 (*b*). Thus, the presumed "cost to the retailer" is 125 per cent of the invoice cost of the cigarettes it sells.

A retailer may sell cigarettes below its presumed cost if the retailer can establish that its cost of doing business is less than twenty-five per cent of its invoice cost. In any event, G. L. c. 64C, § 16, permits "[a]ny retailer" to advertise and sell cigarettes "at a price made in good faith to meet the prices of a competitor who is selling the same article at cost to him as a . . . retailer."[3] In other words, a retailer may sell below its cost, either actual or presumed, to meet the prices of a competitor with lower costs.

The commissioner is charged with enforcing the cigarette pricing laws. G. L. c. 64C, § 12. In 1989, the commissioner promulgated a regulation to administer G. L. c. 64C, §§ 12-21.[4] See § 64C.14.1. The regulation establishes a "general rule" that no retailer licensed to sell cigarettes "shall advertise, offer to sell, or sell cigarettes at a price that is less than the applicable presumptive cost [also referred to as the "presumptive minimum price"] without obtaining the commissioner's prior written approval." § 64C.14.1(3). Based on periodic inquiries by the commissioner with regard to the current prices charged by cigarette manufacturers, the commissioner establishes presumptive minimum prices for each brand.[5] Prior approval for a retailer to sell below these presumptive minimum prices is

---

[3]Certain sales are exempt from the cigarette pricing laws. These include sales at retail or wholesale made "(*a*) in an isolated transaction and not in the usual course of business; (*b*) where cigarettes are . . . sold in [a] bona fide clearance sale[] for the purpose of discontinuing trade in such cigarettes . . . ; (*c*) where cigarettes are . . . sold as imperfect or damaged . . . ; (*d*) where cigarettes are sold upon the complete final liquidation of a business; (*e*) where cigarettes are . . . sold by any fiduciary or other officer acting under the order or direction of any court; (*f*) where cigarettes are . . . sold for charitable purposes or to relief agencies; (*g*) where cigarettes are sold on contract to any department, board or commission of the commonwealth or any political subdivision thereof." G. L. c. 64C, § 15.

[4]The statutory scheme was first enacted by St. 1945, c. 547, § 1.

[5]The regulation defines "presumptive cost" as essentially the invoice cost of the cigarettes to the retailer plus the statutorily presumed "cost of doing business," which is presently at twenty-five per cent. G. L. c. 64C, § 13 (*b*). The "invoice cost of the cigarettes to the" licensed seller is referred to in the

obtained through a process also set forth in the regulation. § 64C.14.1(4). Such approval is granted only after a hearing, at which the retailer has the burden to show "by a preponderance of the evidence that [its] actual cost is less than the applicable presumptive cost." § 64C.14.1(4)(d). The commissioner's approval is "valid for a period of one year." § 64C.14.1(4)(i). There is no provision in the regulation by which a retailer can obtain prior approval to meet the prices of its competitors, as permitted by G. L. c. 64C, § 16, regardless of its costs.

A retailer that advertises or sells cigarettes below their presumptive costs without the prior approval of the commissioner is subject, on the occasion of its first violation, to a five-day suspension of its license to sell cigarettes. § 64C.14.1(4)(j).[6] If the retailer is found to have violated this regulation on a

regulation as the "[b]ase cost of cigarettes." § 64C.14.1(2). This base cost is determined by the commissioner, who periodically obtains each cigarette manufacturer's list price for all the cigarette brands sold in Massachusetts, which is assumed to be the "wholesale cost." In accordance with G. L. c. 64C, § 13, and § 64C.14.1(2), the "[b]ase cost" of cigarettes to the retailer is then calculated. In the case of nonchain stores, the base cost is 102.75 per cent of the wholesale cost. See G. L. c. 64C, § 13 ("two per centum" more than cost to wholesaler, plus cartage cost "deemed to be three-fourths of one percent of the basic cost of the cigarettes to the wholesaler"). In the case of chain retail stores, the base cost is 101.25 per cent of the wholesale cost. See *id.* (defining "chain store" as "any person or persons who own or maintain ten or more retail outlets in the commonwealth," and stating that base cost for chain stores is "one-half per centum" greater than cost to wholesalers, plus "three-fourths of one percent" for cartage).

Once the base cost of each brand of cigarettes is established, the statutorily presumed cost of doing business (twenty-five per cent of invoice cost) is added to establish the "presumptive cost." The presumed "cost of doing business" was raised in 1995, St. 1995, c. 69, from 12.4 per cent of the base cost to twenty-five per cent. This increase is reflected in the language of § 13 (*b*) but not in the applicable regulation. See 830 Code Mass. Regs. § 64C.14.1(2) (retailer's presumptive cost defined as "112.4% of the base cost of the cigarettes to the retailer"). In determining the presumptive cost, the commissioner uses the statutory twenty-five per cent rather than the outdated regulation.

The commissioner determines the base cost and the presumptive cost (also referred to as the "presumptive minimum price") several times each year, and posts them for each brand of cigarette on the Department of Revenue (department) Web site. They are also delivered to licensees during department investigations.

[6]General Laws c. 64C, § 14, sets forth a different penalty for a retailer who makes a sale in violation of the cigarette pricing laws, namely a "fine of not more than five hundred dollars." The commissioner asserts that the power to

second occasion within a twelve-month period, the commissioner "may summarily revoke" its license. § 64C.14.1(3), (6). On receiving notice of the commissioner's finding of a violation and license suspension, the retailer may request a presuspension hearing to challenge them. § 64C.14.1(5)(a). The scope of the hearing is expressly "limited to a determination whether: 1. The licensee has requested and obtained the prior written approval of the commissioner . . . to sell below the applicable presumptive cost; and 2. The licensee has demonstrated that no advertisements, offers to sell, or sales were made at prices below the applicable presumptive cost." § 64C.14.1(5)(h). If, after the hearing, the commissioner suspends the retailer's license, the aggrieved retailer can appeal from the commissioner's findings and sanction to the board. § 64C.14.1(7).[7,8]

b. *Facts.* Expedito Duarte is a licensed cigarette retailer[9] who owns and operates two convenience stores in New Bedford: Expo's at 332 Brock Avenue, and Expo's II at 390 Dartmouth Street.[10] The stores generate approximately $3 million per year

suspend a retailer's license derives from G. L. c. 62C, § 68, which allows the "commissioner [to] suspend or revoke any license" if "[t]he licensee or registrant has . . . willfully failed to comply with any provision of the tax laws of the commonwealth or regulations thereunder." G. L. c. 62C, § 68 (5). The validity of the commissioner's authority to suspend the license to sell cigarettes for violations of the cigarette pricing statute is not contested by the parties in this litigation.

[7]An aggrieved retailer can also appeal from a summary revocation of its license to the board.

[8]Pending the appeal, the suspension is without effect. See § 64C.14.1(7)(b).

[9]Expedito Duarte's licenses are issued pursuant to G. L. c. 64C, § 2 ("No person shall sell tobacco products or act as a . . . retailer, in the commonwealth unless licensed to do so in accordance with section sixty-seven of chapter sixty-two C"), and G. L. c. 62C, § 67 ("each person who desires to obtain a license as a . . . retailer, as defined in chapter sixty-four C, . . . shall file with the commissioner an application in such form as the commissioner prescribes, giving such information as the commissioner requires"). See G. L. c. 62C, § 67, second par. ("In the instance of an application for a license as a . . . retailer, as defined in chapter sixty-four C, the commissioner shall investigate the prior activities of the applicant. If the commissioner determines that said applicant has been convicted of any violation of the provisions of chapter sixty-four C or any other pertinent violation of law, he may deny the application . . .").

[10]By virtue of owning only two retail stores Duarte is a nonchain retailer. G. L. c. 64C, § 13 (*c*). See note 5, *supra.*

from the sale of cigarettes, a substantial portion of their total revenue.

In response to anonymous complaints that Duarte was selling cigarettes below their presumptive costs, a Department of Revenue (department) tax examiner conducted an investigation of both retail stores on June 9, 2003. During the course of that investigation, the tax examiner provided Duarte with a list of the presumptive minimum prices as established by the commissioner[11] and informed him that his prices for packs of cigarettes were below those pricing levels. The tax examiner warned Duarte to raise his prices at both locations or he would face an enforcement action.

Four months later, the tax examiner returned to the stores. On October 15, 2003, the tax examiner visited Expo's II and found that the prices for cigarette packs again fell below the presumptive minimum prices. Duarte was in the store at the time and explained to the tax examiner that his prices were in line with those of a competitor — specifically, B.J.'s Wholesale Club — and therefore in compliance with the law. Duarte also informed the examiner that the prices charged at both his store locations were the same, a fact confirmed by the tax examiner when he visited Expo's I on October 17.

On October 27, 2003, the commissioner informed Duarte by letter that Expo's I and II were selling cigarettes below their presumptive costs without his prior written approval. The letter served as notification, pursuant to § 64C.14.1(5), that Duarte's conduct violated G. L. c. 64C, § 14, and § 64C.14.1(3), and that the commissioner intended to suspend his cigarette retailer license for five days. The letter offered Duarte the opportunity for a presuspension hearing, which he requested.

The hearing took place on December 18, 2003. It was limited to the issues whether Duarte had sold or advertised cigarettes below their presumptive costs and, if so, whether he had obtained prior approval to do so. Duarte was precluded by the regulation from establishing that his prices were set in good faith to meet the prices of his competitors. Following the hearing, the commissioner found that "the Licensee failed to demonstrate that

---

[11]The list is generated by the cigarette tax unit of the bureau of desk audit of the department.

no advertisements, offers to sell, or sales were made at prices below the presumptive minimum cost," and that there was no question that Duarte had not sought prior written approval to sell cigarettes below those presumptive costs. Consequently, the commissioner suspended Duarte's licenses for five days effective January 19, 2004.

c. *Further proceedings.* Duarte appealed from the commissioner's decision to the board. In that appeal, Duarte did not challenge the commissioner's finding that he advertised and sold cigarettes below their presumptive costs; rather, he contended that his cigarette prices were set "in good faith to meet the prices of a competitor who [was] selling the same article," G. L. c. 64C, § 16, and therefore were not in violation of G. L. c. 64C, § 14. In addition, he claimed that because the department's regulation precluded him from demonstrating his compliance with G. L. c. 64C, § 16, at his suspension hearing, the regulation was inconsistent with and in excess of the statutory language on which it was purportedly based, and that its application to his case denied him due process.

On March 16, 2005, the board held a hearing at which Duarte was permitted to offer evidence that he set his cigarette prices to meet the prices of competitors in the New Bedford area. He introduced in evidence receipts from other New Bedford stores dated between November 11, 2003, and March 15, 2005, establishing that those retailers sold cigarettes below the presumptive costs set by the commissioner, at least during the period after the enforcement action was brought against Duarte and through the date of the board's hearing. In addition, Duarte testified that it was his practice during 2003 to keep track of the sales of the top ten retail sellers of cigarettes in New Bedford, and to match their prices in his stores.[12]

Duarte also testified that in the months following his receipt of the October 27, 2003, notice of violation and suspension, he filed (to no avail) written complaints against fifty-one different

---

[12]He stated specifically that "[m]y business is to check my competition [and] to make sure that my competition is not beating me on my price." "[The] top ten accounts in New Bedford, that's who I compete [with] on an every day basis on regular packs of cigarettes," and "[w]hatever pricing my competition was selling at, I was meeting them at."

retailers with the department, asserting that those retailers (his competitors in New Bedford) were uniformly charging less than their presumptive costs.[13] Duarte further testified that when he asked the department to provide him with the names of cigarette retailers in the New Bedford area that had received prior approval to sell below their presumptive costs, the department refused to provide the information, claiming that it was confidential, and that its disclosure was specifically precluded by law.[14]

The board took Duarte's appeal under advisement and subsequently ordered a second hearing to address two issues: first, whether § 64C.14.1 is consistent with *Commissioner of Corps. & Taxation* v. *Ryan*, 323 Mass. 154, 157 (1948) (commissioner has no authority to "fix prices for cigarettes"); and second, "[w]hether the [b]oard has jurisdiction to hear and decide the matter of the proposed suspension of [Duarte's] license to sell cigarettes."[15]

On July 10, 2006, the board issued its decision vacating the commissioner's suspension of Duarte's license and declaring § 64C.14.1 "invalid and of no legal effect" because it is "inconsistent with the statute[, G. L. c. 64C, §§ 12-21,] and constitutionally deficient." The board found, as a matter of fact, that Duarte "did offer cigarettes for sale for prices not previously authorized by [the department]," but that "[i]n so doing, he was acting in good faith to meet the prices charged by his

---

[13]Section 64C.14.1(11) allows "[a]ny person who wishes to report a violation of [the minimum pricing regulation] to write to the [department]." In spite of these many complaints, the board found that there was no evidence that the department investigated "even a single business competitor of Mr. Duarte" based on these complaints. The board also concluded that the department "did not make effective efforts, as far as it appears from this record, to bring New Bedford area retailers into compliance with its prescribed minimum price levels."

[14]Despite the department's written response to Duarte claiming that the names of stores that had sought and received prior approval was confidential, a supervisor at the department testified at the hearing that only one retailer (B.J.'s Wholesale Club) had been approved to sell below its presumptive costs, and that that approval applied only to the pricing of cartons of cigarettes, not individual packs. As of the date of the hearing, no New Bedford retailer had been granted permission to sell individual packs of cigarettes below their presumptive costs.

[15]The record does not contain a transcript of the second hearing before the board, and Duarte's brief suggests that there is none.

competitors in the New Bedford area." In addition, the board found that cigarettes "were widely available in the New Bedford area for prices under the . . . mandated minimum levels during the time frame of the enforcement action against Mr. Duarte."

In its decision, the board noted an "incongruity between the commissioner's price-fixing regulation and the statutory provisions upon which it is based." The board concluded, as a matter of law, that § 64C.14.1 exceeded the scope of G. L. c. 64C, §§ 12-21, because the regulation "had the effect of fixing prices for cigarettes, without statutory authorization." The board further concluded that the presuspension hearing provided for by § 64C.14.1(5) failed to comply "with constitutional requirements of procedural due process," because "the risk of an erroneous deprivation of [Duarte's] . . . license . . . would appear to be high." The board found that "[r]egardless of the relationship between his cigarette prices and actual cost, the regulation would make the sanction of license suspension or revocation all but automatic" if the retailer had not sought prior approval to sell below the presumptive cost. Such a "regulatory scheme truncates the issues allowable for consideration at the hearing in a way that makes an erroneous outcome not merely possible, but likely in cases like the appellant's."

The commissioner filed a timely notice of appeal, and we transferred his appeal to this court on our own motion.

2. *Discussion.* On appeal, the commissioner claims that the establishment of presumptive costs under § 64C.14.1 is consistent with G. L. c. 64C, §§ 13 and 14; that the presuspension hearing process established by § 64C.14.1(5) is consistent with State and Federal due process protections; that, regardless of the constitutionality of the hearing process, the board lacks the authority to declare a regulation unconstitutional; and, finally, that the board's conclusion that Duarte sold his cigarettes below the presumptive minimum prices in a good faith effort to match his competitors is unsupported by the evidence.

We conclude that the commissioner's regulation establishing presumptive costs is not inconsistent with the statutory framework and does not constitute "fix[ing] prices" in contravention of our decision in *Commissioner of Corps. & Taxation* v. *Ryan, supra.*

We also conclude that the board lacks authority to declare regulations promulgated by the commissioner to be facially "invalid and of no legal effect," although it may find that their application in a case before it is violative of due process or inconsistent with the statutory purpose. We agree with the board that the hearing process set forth in § 64C.14.1(5) failed to provide Duarte with the due process to which he was entitled under the statutory framework, and that Duarte presented sufficient evidence to support the board's conclusion that "he was acting in good faith to meet the prices charged by his competitors in the New Bedford area."

a. *Standard of review.* "We will not modify or reverse a decision of the board if the decision is based on both substantial evidence and a correct application of the law." *Boston Professional Hockey Ass'n* v. *Commissioner of Revenue,* 443 Mass. 276, 285 (2005). *Kennametal, Inc.* v. *Commissioner of Revenue,* 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). Our review of the sufficiency of the evidence is limited to "whether a contrary conclusion is not merely a possible but a necessary inference from the findings." *Id.,* quoting *Commissioner of Revenue* v. *Houghton Mifflin Co.,* 423 Mass. 42, 43 (1996).

b. *Presumptive cost.* The board found that § 64C.14.1 had the "effect of fixing prices for cigarettes," and that this effect conflicts with G. L. c. 64C, as construed by this court. The board, therefore, concluded that the regulation was invalid. Setting aside for the moment the board's authority to declare a regulation invalid, we disagree with the substance of its ruling.

Our review of the "validity of a regulation promulgated by a State agency is guided by the established principle that '[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate,' " *Smith* v. *Commissioner of Transitional Assistance,* 431 Mass. 638, 646 (2000), quoting *Dowell* v. *Commissioner of Transitional Assistance,* 424 Mass. 610, 613 (1997). Only an "agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts." *Smith* v. *Commissioner of Transitional Assistance, supra.*

In *Commissioner of Corps. & Taxation* v. *Ryan, supra* at 157, the court stated that "nowhere in G. L. c. 64C is authority given to the commissioner to fix prices for cigarettes," and that, under G. L. c. 64C, §§ 13 and 14, "[t]he cost, below which cigarettes may not be sold, is the actual cost to the particular retailer, and not the usual cost in the trade or the cost as determined by any survey or by any public officer." *Id.* The context in which these statements were made was a proclamation by the commissioner that the retail price of "popular brands" of cigarettes should not be less than $1.98 per carton or twenty cents per pack. *Id.* at 156. This was not a presumptive minimum price that could be rebutted by evidence of actual cost. The license of a drugstore was suspended for selling cigarettes below the price the commissioner had set. We rejected this ground for the suspension, but also held that the board had the right to rely on the presumption, created by G. L. c. 64C, § 13 (*b*), that " '[i]n the absence of proof of a lesser or higher cost of doing business by the retailer' the cost of doing business shall be taken to be six per cent [now twenty-five per cent] of the invoice cost of the cigarettes to the retailer." *Id.* at 158-159.

Contrary to the board's conclusion, the commissioner's regulation providing for the periodic establishment of presumptive costs is not inconsistent with the language and purpose of G. L. c. 64C, §§ 13 and 14, and is rationally related to its enforcement. The regulation does not "fix" prices but instead creates a rebuttable presumption that the costs periodically established by the commissioner reflect the costs to the retailer of selling various packs of cigarettes.[16] The regulation and the statute are consistent in their definition of a retailer's "presumptive cost" (invoice cost plus twenty-five per cent),[17] and both provide that a retailer may sell cigarettes below its presumptive costs by providing "proof of a less[e]r . . . cost of doing business."

[16]There is no credible argument that the manner by which the commissioner periodically establishes such presumptive costs is unreasonable, arbitrary, or otherwise repugnant to statutory purpose. See note 5, *supra.*

[17]As noted, the regulation sets forth a lower presumptive "cost of doing business," because it was last updated in 1995. See note 5, *supra.* The statute was amended in 1995 increasing the "cost of doing business" presumption to twenty-five per cent from 12.4 per cent. St. 1995, c. 69. However, the commissioner uses the current statutory formula in establishing presumptive costs.

G. L. c. 64C, § 13 (*b*). The principal difference between the statute and the regulation is the requirement that such proof be presented before the retailer proceeds to make sales below its presumptive costs. If this regulatory requirement is valid, then the commissioner may appropriately base the suspension of a retailer's license on its wilful violation. G. L. c. 62C, § 68.

While the statute is silent on this point, in our view it does not preclude such a regulatory requirement where the requirement is a reasonable and practical means of enforcing the statute's provisions and efficiently accomplishing its goal of preventing retailers from selling cigarettes as " 'loss-leaders' with intent to injure competitors or to destroy competition." G. L. c. 64C, § 12. Thus, we conclude that § 64C.14.1(1)-(4) is rationally related to the statutory goals set forth in G. L. c. 64C, §§ 12-21, and is, accordingly, valid. See *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 769 (1996), quoting *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983) ("In reviewing a regulation, a court '[cannot] substitute [its] judgment as to the need for a regulation, or the propriety of the means chosen to implement the statutory goals, so long as the regulation is rationally related to those goals' ").

c. *Scope of the presuspension hearing.* We agree with the board that the presuspension hearing process provided by § 64C.14.1(5) "truncates the issues allowable for consideration at the hearing in a way that makes an erroneous outcome not merely possible, but likely in cases like [Duarte's]."

While G. L. c. 64C, § 14 (*a*), provides that "[i]t shall be unlawful for any retailer . . . [to] sell at retail cigarettes at less than cost to the retailer," § 16 permits "[a]ny retailer" to sell "cigarettes at a price made in good faith to meet the prices of a competitor who is selling the same article at cost to him." Section 16, therefore, presents an alternative statutory basis for (and defense to) below-cost sales if the retailer can demonstrate that his prices were set, in good faith, to match those of his competitors.[18] The regulation, however, effectively writes § 16 out of the statute by, on the one hand, allowing the "Commis-

---

[18]General Laws c. 64C, § 15, also prohibits the application of § 14 to "unusual sales," listed at note 3, *supra.* Section 64C.14.1(4)(k) addresses

sioner [to] suspend any license for a period of five days if the licensee . . . sells cigarettes at less than the applicable presumptive cost without the Commissioner's prior written approval," § 64C.14.1(3); and, on the other hand, not providing for prior written approval based on a retailer's "good faith" need to meet a competitor's prices regardless of the retailer's costs.[19]

The regulation further truncates the retailer's rights under the statute by providing for a presuspension hearing "limited to a determination of whether . . . [t]he licensee has requested and obtained prior written approval . . . to sell below the applicable presumptive cost; and [whether] the licensee has demonstrated that no . . . sales were made at prices below the presumptive cost." Thus, the retailer is expressly precluded from demonstrating actual compliance with § 16 by, in good faith, meeting the prices of its competitors.

While we generally defer to the regulations promulgated by a State agency, the "principles of deference . . . are not principles of abdication." *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995). An agency "has no authority to promulgate rules and regulations which are in conflict with the statutes or exceed the authority conferred by the statutes" under which the agency operates. *Telles* v. *Commissioner of Ins.*, 410 Mass. 560, 564 (1991), quoting *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare*, 326 Mass. 121, 124 (1950). The hearing process established here is incongruous with § 16, at least as applied to retailers who rely on its alternative basis for cigarette sales made below their presumptive or actual costs.

Additionally, the hearing process fails to conform to Federal and State due process requirements,[20] to which Duarte is entitled. Cf. *Goldstein* v. *Board of Registration of Chiropractors*, 426

these "unusual sales" as "exceptions to [the] prior approval requirement." The [e]xceptions do not, however, include an "exception" tailored to the language of G. L. c. 64C, § 16.

[19]There may be a number of reasons for a retailer whose costs are below the presumptive costs established by the commissioner to want to sell below those presumptive costs, aside from the need to meet a competitor's prices. In such circumstances, the retailer can seek the commissioner's prior written approval in order to avoid any enforcement action. This is not such a case.

[20]Procedural due process is protected by the Fourteenth Amendment to the

Mass. 606, 613 (1998) (adjudicatory proceeding in which chiropractor's license could be revoked implicates due process rights). Cf. *Konstantopoulos* v. *Whatley*, 384 Mass. 123, 131-132 (1981) ("plaintiff's entertainment license clothes him with a constitutionally protected interest of which he cannot be deprived without procedural due process"). "The fundamental requirement of due process is notice and the opportunity to be heard 'at a meaningful time and in a meaningful manner,' " *Matter of Angela*, 445 Mass. 55, 62 (2005), quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965), although exactly what that entails "varies with context." *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982). "[T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976). See *Aime* v. *Commonwealth*, 414 Mass. 667, 675 (1993) ("the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property under the procedures which the State seeks to use").

Duarte stands to lose the right to sell cigarettes, the sales of which make up a substantial portion of his retail stores' revenue, for five days. That property interest is not insubstantial. Under the process afforded to Duarte, the chance of erroneous deprivation of his license is high. General Laws c. 64C, § 16, allows retailers to set prices in a good faith effort to match competing retailers, and Duarte introduced evidence before the board that

United States Constitution, which reads, in relevant part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

Procedural due process is also protected under the Massachusetts Constitution. "Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, and arts. 1, 10 and 12 of its Declaration of Rights, are the provisions in our Constitution comparable to the due process clause of the Federal Constitution." *Pinnick* v. *Cleary*, 360 Mass. 1, 14 n.8 (1971).

he did just that. He was not, however, afforded the opportunity to make that showing or present that statutory defense in the limited presuspension hearing provided by § 64C.14.1(5). The commissioner's interest in such a limited hearing is, as the board found, "elusive," where the commissioner is required in any event to hold a presuspension hearing if one is requested. See § 64C.14.1(5)(a). Considering additional evidence at that hearing on the question whether the retailer has complied with § 16 cannot be considered unduly burdensome. The commissioner's interest is to maximize the collection of tax revenue from the sales of cigarettes by ensuring competition. See G. L. c. 64C, § 12 ("No person shall be permitted to sell cigarettes as 'loss-leaders' with intent to injure competitors or to destroy competition, and the commissioner shall enforce sections thirteen to twenty-one, inclusive, in order to prohibit such sales and stabilize and increase collections under this chapter"). This interest is not furthered by a process that may erroneously deprive retailers of the right to remain competitive and continue to make such sales. Consequently, to the extent that the regulation precluded Duarte from presenting evidence of his compliance with § 16 at a license suspension hearing, the regulation violated his right to due process.

The question remains whether the board had the authority to declare § 64C.14.1(5) (governing the suspension hearing) invalid and of no legal effect. The board "may act only to the extent that it has express or implied statutory authority to do so." *Commissioner of Revenue* v. *Marr Scaffolding Co.*, 414 Mass. 489, 493 (1993). Here the board was acting under the authority granted by G. L. c. 62C, § 68, to hear an appeal from the commissioner's decision to suspend a license to sell cigarettes. The scope of that review should, accordingly, have been limited to whether the commissioner properly concluded that Duarte "willfully failed to comply with any provision of the tax laws of the commonwealth or regulations thereunder," G. L. c. 62C, § 68. To the extent that the regulation limited Duarte's ability to present his defense under § 16 of G. L. c. 64C, the board had the authority to regard the regulation as invalidly applied to the case before it, and could properly hear and consider the evidence that Duarte was barred from presenting at his hearing

before the commissioner. The board, however, lacked the "inherent or common law authority" to strike down the regulation. *Commissioner of Revenue* v. *Marr Scaffolding Co., supra.*

d. *Duarte's evidence.* The commissioner contends that Duarte failed to introduce sufficient evidence for the board to conclude that he was permissibly selling "cigarettes at a price made in good faith to meet the prices of a competitor who [was] selling the same article at cost to him as a wholesaler or retailer." G. L. c. 64C, § 16. The commissioner first argues that because the evidence Duarte introduced was collected only after the enforcement action began, it does not establish that Duarte set his prices to match his competitors' prices on the dates when the tax examiners found him to be in noncompliance. In other words, the commissioner argues that receipts collected between November, 2003, and March, 2005, are irrelevant in determining the prices charged by Duarte's competitors on June 9, 2003; October 15, 2003; and October 17, 2003. In fact, the commissioner suggests that the evidence supports the proposition that the other stores lowered their prices to match Duarte.[21]

The board properly rejected the commissioner's arguments. Duarte introduced substantial evidence that cigarettes were "readily and widely available . . . in the New Bedford area" for less than their presumptive costs. He introduced receipts of cigarette purchases from competitors demonstrating that those retailers were charging below the presumptive minimum prices from November, 2003, forward, and fifty-one underpricing complaints that he filed with the department during that same time period. Additionally, Duarte testified that he conducted an extensive investigation of cigarette retailers in the area, and found that they were "continuously selling below State minimum [prices]." He also testified that in June of 2003, it was his practice to monitor the prices of his competitors and to match their prices. On the basis of this evidence, the board permissibly concluded that the prices charged by Duarte's competitors in

---

[21]This assertion strains the bounds of credulity, as Duarte introduced evidence that at least fifty-one retailers, including supermarket and pharmaceutical chains, offered cigarettes below their presumptive minimum prices, even after the enforcement actions against Duarte were brought and he was compelled to raise his prices.

November, 2003, and thereafter reflected the prices charged for the same items during the previous months, and that Duarte, in good faith, set his prices accordingly. We will not reverse the board's factual findings unless a "a contrary conclusion is not merely a possible but a necessary inference from the findings." *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 43 (1997). A contrary conclusion is not necessary here.

The commissioner also contends that Duarte failed to demonstrate that he acted in good faith to meet the "prices of a competitor who [was] selling the same article *at cost to him*" (emphasis added) and, therefore, failed to show compliance with G. L. c. 64C, § 16. Specifically, the commissioner asserts that, even assuming Duarte was meeting his competitors' prices, he lacked "good faith" in doing so, because all of his competitors were likewise illegally selling cigarettes below their actual costs, and Duarte knew as much. To the contrary, a reasonable inference from the evidence presented is that Duarte would have had no reason to believe that the large number of his competitors who were selling below the presumptive minimum prices were all selling below their actual costs.[22] The board, which was in position to hear the witnesses and assess the credibility of their testimony, found that Duarte was acting in "good faith," and we will not disturb that finding. *Kennametal, Inc.* v. *Commissioner of Revenue*, *supra* at 43 n.6.[23]

3. *Conclusion.* The board's ruling that § 64C.14.1, in its entirety, was invalid on its face and of no legal effect, is vacated.

[22]Indeed, the sheer volume of retailers selling their cigarettes below their presumptive minimum prices prompted Duarte to ask the department to provide him with names of retailers who were approved to sell below those prices on the basis of their (lower) actual costs. In response, the department refused to tell him, leaving the matter to pure speculation.

[23]The commissioner also asserts that Duarte impermissibly calculated the prices at which his competitors sold cartons, divided that price by ten to establish per pack pricing, and then used that price to determine the price at which he would sell individual packs; and that this practice is impermissible under G. L. c. 64C, § 16, because a carton is not the "same article" as an individual pack. The commissioner's argument would be more persuasive if the evidence established that Duarte used carton prices to determine his individual package pricing. The evidence, which the board credited, was that Duarte knew the prices at which his competitors were selling packs of cigarettes, and he specifically tailored his prices to match those prices.

Further, although we conclude that the presumptive pricing framework set forth in the regulation, § 64C.14.1(1)-(4), (7)-(11), is rationally related to the enforcement of G. L. c. 64C, §§ 12-21, a licensed retailer like Duarte must be afforded an opportunity to demonstrate that he has sold cigarettes "at a price made in good faith to meet the prices of a competitor," G. L. c. 64C, § 16, before his license can be suspended. To the extent that the hearing regulation set forth in § 64C.14.1(5) and (6) foreclosed Duarte's opportunity to make such a showing, it is inconsistent with the statute and due process. Finally, the board's determination that Duarte set his prices in a good faith effort to meet the prices charged by competitors and that his license should therefore not be suspended is supported by substantial evidence and is affirmed.

*So ordered.*