KAREN AHERN-STALCUP & others[1] *vs.* CIVIL SERVICE
COMMISSION & another.[2]

No. 09-P-314.

Suffolk. January 11, 2010. - April 6, 2011.

Present: McHUGH, GREEN, & FECTEAU, JJ.

*Civil Service,* Police. *Public Employment,* Police, Transfer. *Police,* Assign-
ment of duties. *Municipal Corporations,* Police. *Labor,* Civil service,
Police. *Boston. Words,* "Appointing authority."

The Civil Service Commission (commission) erred in denying the claim of
twenty-six former officers, sergeants, and lieutenants in the Boston municipal
police department (BMPD) that they were entitled under G. L. c. 31, § 40,
to employment with the Boston police department (BPD) without loss of
seniority, retirement, or other benefits because their work had been
transferred from the BMPD to the BPD, where no deference was due the
commission's use of the concept of an "appointing authority" (and its ap-
parent view of "departmental units" as subdivisions of "appointing authori-
ties") to circumscribe the interdepartmental transfers that the statute permits;
because the record in the case was silent on what the personnel administra-
tor of the human resources division within the executive office for
administration and finance would have done if the commission had
determined that the work of the armed division of the BMPD had been
transferred to the BPD, this court remanded the matter to the commission
for further proceedings. [212-217]

CIVIL ACTION commenced in the Superior Court Department on
May 29, 2007.

The case was heard by *Bruce R. Henry,* J., on motions for
judgment on the pleadings.

*Howard I. Wilgoren* for the plaintiffs.

*Kay H. Hodge* for city of Boston.

[1]Ulric Alfred, Jr., Anthony Allen, Darlene Arroyo-Francis, James Bogiages,
Paul Bonaceto, Rafael Centeno, Paul Costello, John Daley, Joseph DeLeo,
Francis DeRosa, Thomas Doyle, Diego Flores, Matthew MacDonald, Annie
McCormack, John McGibbon, Kevin McGrail, Michael Mokler, Edward Mur-
phy, Kevin O'Laughlin, Daniel Ring, Albert Riva, Joseph Robles, Julia Rut-
ledge, Wayne Sallale, and Simone Sclafani.

[2]City of Boston.

McHugh, J. The plaintiffs are twenty-six former officers, sergeants, and lieutenants in the Boston municipal police department (BMPD) who unsuccessfully sought employment with the Boston police department (BPD) when their BMPD positions were abolished. After the city of Boston (city) rejected their transfer requests, they appealed to the Civil Service Commission (commission), claiming that G. L. c. 31, § 40, inserted by St. 1978, c. 393, § 11, entitled them to employment with the BPD "without loss of seniority, retirement or other rights" because their work had been transferred from the BMPD to the BPD. The commission rejected their appeal, and following an appeal to the Superior Court pursuant to G. L. c. 30A, § 14, judgment entered affirming the commission's rejection. This appeal followed.

The essential facts are that, beginning in 1979, the city maintained two police departments, the BMPD and the BPD. The BMPD performed police functions on all city-owned property. The BPD, which also performed police functions on property the city owned, performed police functions throughout the city as well. The BMPD consisted of two divisions, one of which was armed and the other unarmed, but employees of both divisions were hired by the city's property and construction management department. BPD hired its own officers.

Early in 2006, the city decided to abolish the BMPD armed division and to create a unified command structure covering all of its armed police officers. Invoking G. L. c. 31, § 35, a statute allowing city employees to transfer between "departmental units" if the "appointing authorities" for both units agree,[3] the city gave all members of the BMPD's armed division the opportunity to apply for transfer to the BPD. Most of the armed BMPD employees applied and, upon successfully completing BPD tests and other screening procedures not challenged here,

---

[3]In pertinent part, G. L. c. 31, § 35, as amended through St. 1986, c. 557, § 11, provides that "[a]ny permanent employee in a departmental unit may apply in writing to his appointing authority for transfer to a similar position within such unit, or may apply in writing to the appointing authorities for such unit and for any other departmental unit for transfer to a similar position in such other departmental unit. With the written consent of such appointing authority or authorities, as the case may be, and with the written consent of the [personnel] administrator, such person may be so transferred."

thirty-three were approved for transfer. The plaintiffs, each of whom failed one of the BPD tests or other procedures, were not offered BPD positions.[4]

After learning that their transfer applications had been rejected, the plaintiffs filed a complaint with the commission alleging that G. L. c. 31, § 40, the pertinent provisions of which are discussed *infra*, entitled them to employment with the BPD because the city had abolished their BMPD positions and transferred their functions to the BPD.[5] After a hearing, the commission dismissed the complaint for two reasons. First, the commission held that § 40 only applied to transfers between positions controlled by the same "appointing authority." Transfers between positions controlled by different appointing authorities, in the commission's view, are governed solely and exclusively by G. L. c. 31, § 35. Second, the commission ruled that transfers pursuant to § 40 required "approval of the [personnel] administrator,"[6] and it was "inconceivable" that the administrator would have approved any transfers the BPD had rejected.

The plaintiffs sought review of the commission's decision in Superior Court where, after a hearing, a judge ordered entry of judgment affirming that decision. The plaintiffs now appeal to this court where, in response, the city relies heavily on the commission's reasoning and approach to the application of G. L. c. 31, § 40.[7]

The language of G. L. c. 31, § 40, provides the appropriate

---

[4]Eleven of the plaintiffs failed a background check, seven did not pass the physical tests or medical examination, four failed a psychological examination, and four either did not request a transfer or withdrew their transfer applications during the processing period.

[5]The initial complaint raised a variety of claims. Later, however, the complaint was amended to allege that the plaintiffs were entitled to BMPD positions because of the work transfer. The case then proceeded through the hearing.

[6]The "personnel administrator" is "the personnel administrator of the human resources division within the executive office for administration and finance." G. L. c. 31, § 1, as amended through St. 1998, c. 161, § 234.

[7]In addition, the city urges that the plaintiffs' election to have their names placed on the reemployment list governed by G. L. c. 31, § 35, amounts to a waiver of any right to transfer pursuant to G. L. c. 31, § 40, they might otherwise have had. It does not appear that the city preserved that argument by raising it before the commission, see *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493-494 (1983), nor has the city cited to us any authority supporting its waiver contention. Moreover, neither the statutory language nor the

starting point for analysis of the plaintiffs' claims and the city's response. The language is straightforward and provides that

> "[i]f the position of a permanent employee is abolished as the result of the transfer of the functions of such position to another department, division, board or commission, such employee may elect to have his name placed on the reemployment list or to be transferred, subject to the approval of the administrator, to a similar position in such department, division, board or commission without loss of seniority, retirement or other rights . . . ."

The term "department" as used in G. L. c. 31, § 40, is not specifically defined in the statute, but the term "[d]epartmental unit" is defined in G. L. c. 31, § 1, as amended through St. 1998, c. 161, § 235, as "a board, commission, department, or any division, institutional component, or other component of a department established by law, ordinance, or by-law." That definition reveals that a "department" is a major organizational unit often containing subunits. See G. L. c. 31, § 33, inserted by St. 1978, c. 393, § 11 (dealing with calculation of seniority of employees who have been transferred, inter alia, "from one departmental unit to another within the same department in a city or town"). On its face, then, and read in accordance with the meaning of the terms it contains, § 40 provides that when a permanent employee's position is abolished because the position's functions have been transferred from one major organizational unit to another major organizational unit, the employee is entitled to follow the transfer if the personnel administrator approves.

No one argues that the plaintiffs were not "permanent employees" or that their positions were not abolished. The city does argue that no substantial evidence before the commission showed that abolition of the plaintiffs' positions was caused or accompanied by transfer of their functions to the BPD. But the proceedings before the commission did yield substantial evidence that the plaintiffs' functions were transferred to the BPD, although the commission made no finding on the issue. The evidence

statutory scheme considered as a whole evinces a legislative intent to force displaced employees to pick one avenue for possible reemployment to the exclusion of all others.

included testimony that calls for assistance to the BMPD dispatch center received before the plaintiffs' positions were abolished were dispatched directly to a BMPD officer. After abolition of the plaintiffs' positions, the BMPD dispatch center transferred those calls for assistance to a BPD dispatch center, which relayed them to a BPD officer. The same kind of change occurred with respect to alarms the BMPD dispatch center received before the armed positions were abolished. More generally, the record reveals, as noted earlier, that the plaintiffs performed on city-owned property and occasionally elsewhere the same functions BPD officers performed on the same property and throughout the city. Abolition of the plaintiffs' positions, therefore, necessarily meant that their work would be picked up by BPD officers.

Despite the existence of substantial evidence supporting the plaintiffs' position, the commission made no specific findings on the transferred work issue.[8] Probably the commission believed that findings on the issue were unnecessary because of its view that G. L. c. 31, § 40, afforded the plaintiffs no relief even if their work had been transferred to the BPD. As the commission saw it, § 40 applied only to transfers within the same "appointing authority" and the BPD and BMPD were different "appointing authorities." The basis for the commission's view is found in the following footnote in its decision:

> "Under civil service definitions, an 'Appointing Authority' may have several 'departmental units'. The term 'departmental unit' that appears in G. L. c. 31 § 39[9] is defined at G. L. c. 31, § 1 as, 'a board, commission, department, or any division, institutional component, or other component of a department established by law, ordinance or by-law'.

[8]In articulating its reasons for concluding that the city had a right to abolish the armed BMPD positions, however, the commission made a number of findings that are consistent with a conclusion that armed BMPD work had been transferred to the BPD for reasons of economy.

[9]General Laws c. 31, § 39, inserted by St. 1978, c. 393, § 11, deals with termination of permanent employees "because of lack of work or lack of money or abolition of positions" under circumstances where the functions of the position are not transferred to another department. Although the commission focused on G. L. c. 31, § 40, in the text of its decision, it discussed § 39 in footnotes apparently because the city took the position that it had abolished the plaintiffs' positions without transferring their work to the BPD.

Thus 'departmental units', themselves, may have several components. G. L. c. 31 § 1 defines an 'Appointing Authority' as 'any person, board or commission with power to appoint or employ personnel in civil service positions'. Thus, the 'departmental units' of an 'Appointing Authority' are those 'department units' [*sic*] for which the Appointing Authority has the 'power to appoint or employ personnel in civil service positions.' "

The commission's interpretation of a statute that operates within its sphere of responsibility is, of course, entitled to deference. *Falmouth* v. *Civil Service Commn.*, 447 Mass. 814, 822 (2006); *Provencal* v. *Commonwealth Health Ins. Connector Authy.*, 456 Mass. 506, 514 (2010). As often noted, though, that deference does not amount to abdication, see, e.g., *Duarte* v. *Commissioner of Rev.*, 451 Mass. 399, 411 (2008), and, in any event, "interpretation of a statute is [ultimately] a matter for the courts." *Onex Communications Corp.* v. *Commissioner of Rev.*, 457 Mass. 419, 424 (2010).

In this case, the commission used the term "appointing authority" to circumscribe the interdepartmental transfers G. L. c. 31, § 40, permits because it apparently viewed "departmental units" as subdivisions of "appointing authorities." They are not. The definitions contained in G. L. 31, § 1, reveal that a "departmental unit" is an organizational unit and that an "appointing authority" is a person or entity with the power to make personnel decisions. Many "appointing authorities" can exist within a single department.

There is, therefore, no basis for using the concept of "appointing authority" to circumscribe the area within which G. L. c. 31, § 40, operates. Moreover, when the Legislature intended to use that concept as a circumscription, it knew exactly how to do it, as is evident from the language of G. L. c. 31, § 35:

"Any permanent employee in a departmental unit may apply in writing to his appointing authority for transfer to a similar position within such unit, or may apply in writing to the appointing authorities for such unit and for any other departmental unit for transfer to a similar position in such other departmental unit. With the written consent of

such appointing authority or authorities, as the case may be, and with the written consent of the administrator, such person may be so transferred."

See G. L. c. 31, § 33 (dealing with calculation of seniority of employees transferred to different positions within and without "the same appointing authority"). No such circumscription appears in § 40.

The city seeks to remedy the weakness in the commission's analysis by inventing a new definition of "appointing authority." The plaintiffs, the city says,

> "could not transfer to the BPD under [G. L.] c. 31, § 40, because that statute applies only to transfers within a single appointing authority, and the BMPD and the BPD fall under separate appointing authorities.
>
> "These determinations are required by [G. L.] c. 31, § 1, which defines an 'appointing authority' as being made up of 'departmental units,' which in turn are defined as 'a board, commission, department, or any division, institutional component, or other component of a department . . . .' "

But G. L. c. 31, § 1, says nothing of the sort. Instead, as the commission correctly stated, the section simply says that an "appointing authority" is "any person, board or commission with power to appoint or employ personnel in civil service positions." Nothing else in c. 31 limits the force of § 40 to transfers within the jurisdiction of a single appointing authority.

That leaves the commission's final reason for its decision, i.e., that it is

> "inconceivable that [the personnel administrator], given the powers and responsibilities of a Boston Police Officer, would not first consult with the Boston Police Department prior to granting . . . approval [for any transfer from the BMPD to the BPD]. As such, any transfer request under [G. L. c. 31, § 40,] would be moot as [the personnel administrator] would not be expected to approve of transfers regarding individuals who had failed a background check, physical abilities test or psychological examination conducted by the [c]ity."

Perhaps, but the decision whether to approve a transfer under § 40 is committed to the personnel administrator, not to forecasters of decisions the administrator never made. Neither the commission nor the city cite any authority for the proposition that the commission can base its decisions on what it assumes the personnel administrator would have done had the personnel administrator been given an opportunity to carry out his or her statutory responsibilities.

In sum, if the plaintiffs' positions were abolished because their work was transferred from the BMPD to the BPD, then the plaintiffs are entitled to be "transferred, subject to the approval of the administrator, to a similar position in such department, division, board or commission without loss of seniority, retirement or other rights." G. L. c. 31, § 40. As noted, there was substantial evidence before the commission that the work of the armed division of the BMPD was transferred but the issue was contested and, given the view it took of the law, the commission never resolved the issue. Because the commission's interpretation of the law was incorrect, and the record is silent on what the administrator would have done if the commission determined that the work had been transferred, the judgment of the Superior Court is vacated, and the matter is remanded to the commission for further proceedings consistent with this opinion.

*So ordered.*