JACQUELINE LOCKHART & others[1] vs. ATTORNEY GENERAL
& another.[2]

Suffolk.  November 9, 1983. — January 18, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Moot Question.  Practice, Civil,  Moot case.*

This court declined to express its views on constitutional questions raised
  by an action challenging the refusal of the Attorney General to certify
  a proposed initiative petition as proper, where the case had become
  moot as a result of the plaintiffs' failure to collect sufficient signatures
  to qualify the initiative petition for submission to the General Court,
  and where, despite the plaintiffs' stated intention to file a similar peti-
  tion in a subsequent year, it was unclear that the same issues would
  arise again.  [782-785]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 21, 1983.

The case was reported by *Liacos, J.*

*Robert G. Stewart (John F. Fulgoney & Julius B. Levine*
with him) for the plaintiffs.

*Alexander G. Gray, Jr.,* Assistant Attorney General, for
the defendants.

*Daniel E. Callahan & Brownlow M. Speer,* for Massa-
chusetts Defenders Committee, amicus curiae, submitted a
brief.

*William E. Bernstein & Peter W. Agnes, Jr.,* for Massa-
chusetts Bar Association, amicus curiae, submitted a brief.

WILKINS, J.  The plaintiffs, the first fifteen signers of an
initiative petition, commenced this action on September 21,

─────────────────────────────

[1] Julius B. Levine, Ronald McLeish, Edward J. Colosimo, George L.
Hanna, David J. Millett, Michael Jay Tesler, Linda Cregg, Linda J. Hyde,
Lawrence F. Hyde, Susan B. Kaplan, Elizabeth L. Rowen, Katharine T.
Leech, Robert P. Clayman, and Ann N. Kramer.

[2] The Secretary of the Commonwealth.

1983, in the Supreme Judicial Court for the county of Suffolk, challenging the refusal of the Attorney General to certify that initiative petition as proper and further challenging the refusal of the Secretary of the Commonwealth to issue forms to the plaintiffs for gathering signatures in support of their initiative measure. On October 3, 1983, a single justice reserved and reported the case to this court on the pleadings and on a statement of agreed facts.

The case was argued before the full court on November 9, 1983. At issue was the propriety of the Attorney General's decision, pursuant to art. 48, The Initiative, II, § 3, not to certify as proper the initiative measure which is entitled "[a]n initiative petition for an act providing for certain reforms in the criminal justice system."

An initiative petition must contain only subjects "which are related or which are mutually dependent." Art. 48, The Initiative, II, § 3. Moreover, no measure that relates "to the powers . . . of courts" may be the subject of an initiative petition. Art. 48, The Initiative, II, § 2. The Attorney General concluded, on both these grounds, that the petition contained excluded matters and declined to certify the initiative petition.[3]

On October 3, 1983, the single justice, without opposition from the defendants, entered a preliminary injunction which directed that the Secretary of the Commonwealth release to the plaintiffs signature sheets containing a summary of the petition provided by the Attorney General. By a letter,

---

[3] The Attorney General stated his conclusion in a letter dated September 16, 1983, in which he said in part: "No measure that relates to the power of courts can be the subject of an initiative petition. The petition that you have submitted would significantly constrain the discretion of the courts in handling various criminal matters and cannot be certified.

"Further, the petition containing [sic] one hundred and twenty-eight sections and concerns numerous diverse topics ranging from sentence reform, to changes in the parole board's jurisdiction, to changes in the way good-time credits are awarded to prisoners, to changes in the juvenile justice system, to establishing a prison citing [sic] commission. I cannot rightly say that every provision of this petition is related to a common purpose and therefore cannot certify that the petition contains only subjects which are related or which are mutually dependent."

received by us on November 29, 1983, counsel for the plaintiffs informed us that his clients had failed to collect sufficient signatures (more than 61,000 were required) to qualify their initiative petition for submission by the Secretary of the Commonwealth to the General Court. Art. 48, The Initiative, II, § 4, and V, § 1.

Although the case is moot because the required number of signatures was not obtained, counsel for the plaintiffs urges us to decide the case.[4] He advises us that the plaintiffs have indicated their intention to file the petition again in 1985. He argues that the time limitations of art. 48, The Initiative, II, § 3, are such that a judicial decision cannot readily be obtained early in the approximately nine weeks during which signatures might be obtained and that the pendency of a contest over the validity of a proposed initiative has an adverse effect on efforts to obtain the necessary signatures. He further states that the assistant attorney general who argued the case before us has authorized him to advise this court "that he shares plaintiffs' view that this matter is capable of repetition while evading review." We conclude nevertheless that we should not decide the issues argued in this case.

It is, of course, within our discretion to answer a question which, because of the circumstances, is no longer important to the parties. In *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 (1975), we explained generally that "[c]ourts decline to hear moot cases because (a) only factually concrete disputes are capable of resolution through the adversary process, (b) it is feared that the parties will not adequately represent positions in which they no longer have a personal stake, (c) the adjudication of hypothetical disputes would encroach on the legislative domain, and (d)

---

[4] In his letter he states in part: "While the case is arguably moot, it rightly falls within a well-established exception to the mootness doctrine, raising as it does a question 'of public importance which is capable of repetition, yet evading review.' This exception has been accepted by this Court in cases such as *Grace* v. *Town of Brookline,* 379 Mass. 43, 48 (1979), and by the United States Supreme Court in cases such as *Roe* v. *Wade,* 410 U.S. 113 (1973)."

judicial economy requires that insubstantial controversies not be litigated." On the other hand, we have on occasion answered questions in moot cases where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely, to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot. See *Brach* v. *Chief Justice of the Dist. Court Dep't,* 386 Mass. 528, 532-533 (1982) (administrative regulation of general applicability concerning the surrender of drivers' licenses of persons convicted of certain motor vehicle offenses); *Grace* v. *Brookline,* 379 Mass. 43, 48 n.11 (1979) (municipal by-law concerning certificates of eviction from units subject to rent control); *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 n.5 (1978) (applicability of open meeting law to employee grievance hearing); *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 274 (1978) (standard of proof to be applied in statutory commitment proceedings); *Geehan* v. *Trawler Arlington, Inc.,* 371 Mass. 815, 817 (1977) (construction of Mass. R. Civ. P. 69); *Karchmar* v. *Worcester,* 364 Mass. 124, 136 (1973) (applicability to nonunion employees of statutory agency fee provision in collective bargaining agreement); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943) (applicability of meal tax to college dining facilities). Cf. *Brown* v. *Guerrier, ante* 631, 632 (1983) (where issues were of public importance concerning the statutory authority of the Housing Court Department, although not briefed on one side, we stated our views on those issues to which the answers appeared "reasonably clear"). The standard phrase applicable to disputes whose "life expectancy" is short is that the case is "capable of repetition, yet evading review." *Wolf* v. *Commissioner of Pub. Welfare, supra* at 298 n.7, quoting *Southern Pac. Terminal Co.* v. *ICC,* 219 U.S. 498, 515 (1911).[5] Where a moot issue

---

[5] "An issue apt to evade review is one which tends to arise only in circumstances that create a substantial likelihood of mootness prior to com-

has become a "theoretical dispute" (*Silverman's Liquor Mart, Inc.* v. *Licensing Bd. for Boston,* 348 Mass. 524, 530-531 [1965]), or is not apt to evade review if it arises again (*Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 708 [1976]), or is not likely to recur (*Stokes* v. *Superintendent, Mass. Correctional Inst., Walpole,* 389 Mass. 883, 887 [1983]), we have declined to decide the issue. Of course, where our decision would be of little or no practical guidance (*Commissioner of Correction* v. *Ferguson,* 383 Mass. 651, 653 [1981]), or the factual underpinnings of the dispute have so changed or are likely to so change as to make an appellate decision "a useless and inappropriate exercise" (*Reilly* v. *School Comm. of Boston,* 362 Mass. 689, 693-695 [1972]), we have declined to decide an issue in a moot case.

We think it is significant that in none of the cited cases, in which we have decided a moot issue, was that issue a constitutional one.[6] We are aware of no case in which this court has been willing to answer a constitutional question that was moot. This practice is consistent with the long tradition of not unnecessarily deciding constitutional questions. One value in not deciding moot cases involves the exercise of "'judicial restraint,' especially regarding purported constitutional claims." *Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 707 (1976).

Resolution of the issues in this case is unnecessary at this time. It is true that the issues are important to an over-all view of the permissible scope of the initiative process, and that they were ably argued by the parties. On the other hand, it is not clear that the issues will arise again in the same form or in any form. Much can happen to change the

---

pletion of the appellate process." *First Nat'l Bank* v. *Haufler,* 377 Mass. 209, 211 (1979).

[6] Cf. *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 640 (1981), involving State constitutional questions concerning the funding of medically necessary abortions, a certified class action in which the issue may have been moot as to individual plaintiffs but was not as to all members of the class. See *Blake* v. *Massachusetts Parole Bd.,* 369 Mass. 701, 708 n.12 (1976).

relevant circumstances between now and the time in 1985 when the plaintiffs or others might file a similar initiative petition. There may be legislation enacted in the interim that will make certain provisions in the proposed initiative measure unnecessary or will change the nature of the proposals to be made. Indeed, some of the proposals in the initiative measure are dealt with in legislation enacted on December 21, 1983. See St. 1983, c. 694, entitled "An Act establishing certain rights of victims of crimes." Additionally, the proponents of any similar 1985 initiative measure might choose to eliminate or modify the 1983 proposal so as to remove some or all of the alleged deficiencies stated by the Attorney General.

We conclude in our discretion that we should not offer our views on constitutional questions that will not necessarily arise again in substantially the same form. If, in fact, the issues should reappear, they need not evade review before they become moot. The litigants and this court will be in a position, respectively, to present and to decide them promptly.

Judgment shall be entered dismissing the action as moot.

*So ordered.*