## Rocco Solimeno & others[1] vs. State Racing Commission & another.[2]

Suffolk. November 3, 1986. — July 9, 1987.

Present: Hennessey, C.J., Nolan, Lynch, & O'Connor, JJ.

*Moot Question. Practice, Civil,* Moot case. *State Racing Commission. Racing. Statute,* Construction. *Administrative Law,* Agency's interpretation of statute, Substantial evidence. *Constitutional Law,* Freedom of speech, Right to assemble. *Due Process of Law,* Vagueness of statute. *Notice.*

This court declined to address certain issues, arising from the State Racing Commission's upholding exclusions of licensed racing participants from racetrack premises and suspending their licenses, as moot, where the suspensions and exclusions had expired. [400-402]

General Laws c. 128A, § 10A, providing for ejection of "any person" whose presence, on premises where race meetings are conducted, is detrimental to the orderly conduct of racing, authorizes the exclusion of licensed racing participants. [402-403]

Plaintiffs, licensed racing participants, seeking to overturn a decision of the State Racing Commission, did not demonstrate that their boycott of a scheduled racing program, which had resulted in suspensions of their licenses and in their exclusion from racetrack premises, constituted speech entitled to First Amendment protection; nor did they demonstrate interference with their right of freedom of association guaranteed under the First and Fourteenth Amendments to the United States Constitution. [403-404]

There was no merit to the contention of certain licensed kennel owners, greyhound trainers and assistant trainers that G. L. c. 128A, § 10A, authorizing exclusion from racetrack premises of persons "whose presence is detrimental . . . to the proper and orderly conduct of a racing meeting" was unconstitutionally vague either on its face or as applied to them. [404-405]

---

[1] Ronni Nivala, Charles Massey, Marie Amaru, Lawrence Audette, Mona Amaru, Francis Amaru, Dennis LaTour, Arthur O'Brien, Elizabeth Ackles, Robert Ackles, Dennis McKeon, Donald Cuddy, James Lovely, Frank Thetonia, William Thomas, and Edward Ross.

[2] Wonderland Greyhound Park, Inc., intervener.

Where parties appearing before the State Racing Commission were on notice that the hearing could result in suspension of their licenses to participate in racing activities and were given ample opportunity to be heard on the issue, there was no violation of G. L. c. 30A or the due process clause of the Fourteenth Amendment by reason of defective notice, and in any event, no prejudice to the parties' rights was demonstrated. [405-406]

Error appeared in the reversal of a decision of the State Racing Commission suspending the license of a certain dog trainer where substantial evidence supported findings of the commission that the trainer knowingly participated in a boycott of a scheduled racing program. [406-407]


CIVIL ACTIONS commenced in the Superior Court Department on September 17, 1985.

The case was heard by *Haskell C. Freedman*, J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Paul L. Nevins (Philip R. Olenick* with him) for Rocco Solimeno & others.

*Jeffrey S. Robbins (John M. Connolly* with him) for Wonderland Greyhound Park, Inc., intervener.

*Douglas H. Wilkins,* Assistant Attorney General, for State Racing Commission.

*Chester A. Darling* for Edward Ross.

O'CONNOR, J. The plaintiffs, licensed kennel owners, greyhound trainers, and assistant trainers, brought this action under G. L. c. 30A, § 14 (1984 ed.), to overturn the decision of the State Racing Commission (commission) (1) upholding the defendant Wonderland Greyhound Park, Inc.'s (Wonderland) exclusion of the plaintiffs from Wonderland's premises, and (2) suspending the licenses of some of the plaintiffs. A judge in the Superior Court reversed the decision of the commission as to the plaintiff Edward Ross and affirmed it as to the remaining plaintiffs. The plaintiffs, except Ross, appealed. The defendants cross appealed as to Ross. We allowed the plaintiff appellants' application for direct appellate review, and now affirm the judgment below except as to Ross. We reverse the judgment as to Ross, and remand the case to the Superior Court with instructions to enter a judgment affirming the commission's decision as to him.

On May 31, 1985, the plaintiffs, acting in concert, refused to enter their greyhounds for racing at Wonderland as scheduled. As a result, Wonderland's management and the commission made a decision to cancel that evening's racing. On the following day, Wonderland issued ejection notices to the plaintiffs pursuant to G. L. c. 128A, § 10A (1984 ed.). That statute provides in part that "any person licensed to conduct a horse or dog racing meeting . . . shall have the right to . . . eject from its premises any person whose presence on said premises is detrimental, in the sole judgment of the . . . said licensee, to the proper and orderly conduct of a racing meeting. Any person who has been notified by . . . a licensee of a racing meeting not to enter or attempt to enter its premises and who thereafter, without the express approval of . . . a licensee, enters or attempts to enter such premises while a racing meeting is being conducted therein, shall be punished . . . . Any person so excluded by . . . a licensee shall have a right of appeal to the commission. The commission shall hold a hearing within ten days after any such person requests an appeal and may after such hearing by vote allow such person admission to such meeting." In accordance with § 10A, the notices sent by Wonderland to the plaintiffs had the effect of excluding the plaintiffs from Wonderland unless and until the commission on appeal gave them permission to enter. The notices also triggered the operation of 205 Code Mass. Regs. § 5.29 (17) (1981), which provides that a "person ejected from the grounds of an Association licensed by the Commission shall be refused admission to the grounds of all other licensed Associations in Massachusetts until he has been permitted to re-enter the track where he was originally ejected . . . ."

Pursuant to c. 128A, § 10A, the plaintiffs appealed their "ejections" to the commission. The commission conducted a prompt hearing and rendered extensive findings and orders upholding Wonderland's action. The commission also suspended the licenses of some of the plaintiffs.

The commission found that the plaintiffs had "conspired together and acting in concert intentionally *refused* to weigh in their greyhounds at Wonderland Park on May 31, 1985,

knowing their actions would result in the cancellation of that evening's racing program" (emphasis in original). The commission also found that the underlying motivation for the boycott was the plaintiffs' desire to "show strength and to gain leverage over both Wonderland and the Racing Commission to relax the Rules and Regulations of Greyhound Racing." Moreover, the commission found the ramifications of the boycott and the resulting cancellation of the races to be far reaching. Those ramifications included the risk of injury to patrons due to the possible unruliness of a crowd whose expectations for the evening had been thwarted, as well as the probable damage to Wonderland's reputation and the loss of revenue suffered by the Commonwealth, Wonderland, and nonboycotting kennels.

Based on its findings, the commission concluded that Wonderland had acted "reasonably and justifiably" in excluding the plaintiffs from the race track pursuant to G. L. c. 128A, § 10A. The commission reasoned that the plaintiffs' presence at the track following the events of May 31, 1985, "would have created a dangerous situation whereby the [plaintiffs] may have intimidated or coerced other licensees, who honored their commitments and brought dogs to the race track, into joining the boycott, possibly closing the race track indefinitely."

The commission, however, did set dates on which the plaintiffs would be entitled to return to the Wonderland track. Different dates were set for individual plaintiffs, the latest of which was June 1, 1986. June 1, 1986, was also the latest date set by the commission on which any plaintiff whose license had been suspended would again be eligible for licensing. Thus, none of the plaintiffs is now excluded from the Wonderland track or any other Massachusetts race track on account of the boycott, and no relevant license suspension is now in effect. Since the only relief the plaintiffs seek is that "the suspensions and ejections appealed [from] be reversed," and the periods of exclusion and license suspension have expired, we must determine at the outset what issues argued by the parties we ought to consider.

We do not treat as moot so much of the case as involves the constitutionality of the plaintiffs' exclusion from the Won-

derland track (the ejection issue) or the suspension of the plaintiffs' licenses. We decide those issues because the ejections and license suspensions, if left standing, may adversely affect the plaintiffs' ability to obtain employment or to engage in racing in the future both in Massachusetts and elsewhere. General Laws c. 128A, § 11, provides: "The commission shall have full discretion to refuse to grant a license . . . or to suspend or revoke the license of any licensee. If any license is suspended or revoked, the commission shall make a record of its reasons for doing so and such record shall be made available to any person requesting to inspect the same." The commission concedes that it could take the plaintiffs' record into account in determining the severity of sanctions for future violations of its regulations, and it is reasonable to suppose that, in other jurisdictions, the plaintiffs may be harmed by an unfavorable record in this Commonwealth. These potential adverse consequences are sufficient to justify our consideration of the ejections and the license suspensions. The principle is akin to that involved when an appellate court reviews a criminal conviction even after the defendant has completed his sentence. See *Sibron* v. *New York,* 392 U.S. 40, 57 (1968); *Department of Youth Servs.* v. *A Juvenile,* 384 Mass. 784, 786 (1981).

The plaintiffs also argue that their ejection by Wonderland, coupled with the commission's notifying all other Massachusetts race tracks of that action, resulting in the plaintiffs' exclusion from those tracks as well as Wonderland's, prior to any hearing, effectively suspended their licenses and did so in violation of their statutory and constitutional rights. However, the plaintiffs' argument that they were entitled to a preejection hearing is moot because they have been given a hearing and their ejection was upheld. A determination by us that the ejections should not have been effective before the hearing would not advance the plaintiffs' entitlement to the relief they seek in this case, which is that the record of their ejection be expunged altogether. The plaintiffs' attack on their exclusion from tracks other than Wonderland's is also moot because the plaintiffs are no longer excluded and their record, which may affect future opportunities, is not affected by whether their

ejection from Wonderland affected their rights to enter other Massachusetts tracks. Of course, we have discretion to answer questions which are moot, and we have occasionally chosen to do so when the question was of public importance and appeared likely to be repeated but also to evade review. *Porter* v. *Commonwealth,* 396 Mass. 1001 (1985). *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 782-784 (1984). But, we are not persuaded that we ought to address the moot issues in this case, especially because the plaintiffs' challenges are in large measure constitutionally based and we have a long tradition of not unnecessarily deciding constitutional questions. *Id.* at 784.

Turning to the issues which are not moot, we first address the question whether G. L. c. 128A, § 10A, authorizes the exclusion of persons the commission has licensed under G. L. c. 128A, § 9A, to participate in horse and dog racing.[3] Section

---

[3] General Laws c. 128A, § 9A (1984 ed.), provides in material part: "For the purpose of enabling the commission to exercise and maintain a proper control over horse and dog racing conducted under the provisions of this chapter, the rules, regulations and conditions prescribed by the commission under section nine shall provide for the licensing and registering at reasonable and uniform fees, of agents, assumed names, colors, partnerships and minor agreements and shall provide for the licensing at reasonable and uniform fees of veterinarians, blacksmiths, owners, trainers, jockeys and stable employees at horse tracks and veterinarians, owners and trainers of dogs participating in such racing, and any other persons having access to horses and dogs."

The full text of G. L. c. 128, § 10A (1984 ed.), is: "Any commissioner or representative of the commission or any person licensed to conduct a horse or dog racing meeting, including racing meetings conducted in connection with state or county fairs, shall have the right to refuse admission to or eject from its premises any person whose presence on said premises is detrimental, in the sole judgment of the commissioner or representative of the commission or of said licensee, to the proper and orderly conduct of a racing meeting. Any person who had been notified by any commissioner or representative of the commission or a licensee of a racing meeting not to enter or attempt to enter its premises and who thereafter, without the express approval of any commissioner or representative of the commission or a licensee, enters or attempts to enter such premises while a racing meeting is being conducted therein, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months, or both. Any person so excluded by any commissioner or representative of the commission or by a licensee shall have a right of appeal to the commission. The commission shall hold a hearing within ten days after any such person requests an appeal and may after such hearing by vote *allow* such person admission to such meeting."

10A provides that "any person" whose presence is detrimental to the orderly conduct of racing may be ejected. The statute does not expressly discriminate between licensees and others, and the statute must be accorded its plain and ordinary meaning. *Telesetsky* v. *Wight,* 395 Mass. 868, 872 (1985). *Baldiga* v. *Board of Appeals of Uxbridge,* 395 Mass. 829, 832 (1985). Furthermore, § 10A, providing for ejections of persons from premises where racing is conducted, was added to G. L. c. 128A after § 9A, providing for licensing owners and trainers of dogs, and § 11, providing for suspension of licenses, had been added. That fact suggests that the Legislature added § 10A in response to its perception that license suspensions and revocations were insufficient to maintain order at horse and dog racing tracks, and that it was necessary to authorize the commission and those licensed to conduct horse and dog racing to take swift action against anyone whose presence imperils the normal operation of the track. Only if § 10A applies to licensees can this goal be realized. Finally, our construction of § 10A as authorizing the ejection of licensees accords with the construction given to the statute by the commission. The commission's construction is entitled to weight. *Casa Loma, Inc.* v. *Alcoholic Beverages Control Comm'n,* 377 Mass. 231, 235 (1979). *Board of Educ.* v. *Assessors of Worcester,* 368 Mass. 511, 515 (1975).

In addition to their argument that the Legislature did not intend c. 128A, § 10A, to apply to licensed racing participants, the plaintiffs argue that, by affirming their exclusion from Wonderland's track, and by suspending their licenses, the commission violated their Federal and State constitutional rights of free speech and assembly.[4] We are unpersuaded by the plaintiffs' arguments.

The First Amendment safeguards the "communication or expression of ideas or information." *Caswell* v. *Licensing Comm'n for Brockton,* 387 Mass. 864, 868 (1983). The plain-

---

[4] The plaintiffs make no argument based on the State Constitution different from their arguments based on the Federal Constitution. Therefore, we consider only the Federal constitutional arguments.

tiffs' principal contention is that the boycott constituted "symbolic speech" or "expressive conduct" entitled to First Amendment protection. But, we are not told what idea or information, if any, was expressed or intended to be expressed by the boycott, and we discern none. "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment . . . applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive. In the absence of a showing that such a rule is necessary to protect vital First Amendment interests, we decline to deviate from the general rule that one seeking relief bears the burden of demonstrating that he is entitled to it." *Clark* v. *Community for Creative Non-Violence,* 468 U.S. 288, 293 n.5 (1984). The plaintiffs have not demonstrated that their boycott constitutes speech entitled to First Amendment protection.

The plaintiffs' claim that the commission violated their right to freedom of association guaranteed by the First and Fourteenth Amendments fares no better than their claim that their freedom of speech was violated. "Freedom of association guarantees an opportunity for people to express their ideas and beliefs through membership or affiliation with a group." *Caswell* v. *Licensing Comm'n for Brockton, supra* at 871-872. The plaintiffs' failure to show any interference with their right to express their beliefs is fatal to their argument.

The plaintiffs' next contention is that the provision in G. L. c. 128A, § 10A, empowering a person licensed to conduct a racing meeting to exclude from the track "any person whose presence is detrimental . . . to the proper and orderly conduct of a racing meeting," is unconstitutionally vague and therefore void. The plaintiffs correctly point out that a statute is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally* v. *General Constr. Co.,* 269 U.S. 385, 395 (1926). *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 127 (1985). *Caswell* v. *Licensing Comm'n for Brockton, supra* at 873. The plaintiffs' sole contention appears to be that men of common intelligence in the plaintiffs' circumstances would

have been unable to foresee that management personnel at Wonderland would consider the plaintiffs' presence at the track on the days following the boycott detrimental to the conduct of racing. We disagree. We think it was reasonably foreseeable that Wonderland would conclude, as did the commission after hearing, that if the plaintiffs should return to the track pending the outcome of a hearing before the commission, there was a danger that other licensees would be coerced into joining the boycott "possibly closing the race track indefinitely." Therefore, we reject the plaintiffs' argument that G. L. c. 128A, § 10A, is void for vagueness.

We comment briefly on another of the plaintiffs' contentions focusing on vagueness. The plaintiffs assert that, since there is a commission regulation providing for a fine if an owner or trainer fails to present his greyhound in timely fashion to be weighed, the plaintiffs could not have predicted that their engaging in a boycott would result in a penalty other than a fine, that is, in the suspension of their licenses. The argument has no merit. There is a clear distinction between an individual owner or trainer failing to be on time for a weigh-in, and a boycott. Furthermore, one who is on notice that his conduct is proscribed cannot properly challenge a sanction on the ground that he did not know which of several available sanctions would be imposed. See *Commonwealth* v. *Gallant,* 373 Mass. 577, 586 n.11 (1977).

Next, we address the plaintiffs' argument that the formal suspension of their licenses violated G. L. c. 30A and the due process clause of the Fourteenth Amendment because the plaintiffs had been given no notice before or during the commission hearing that, at the hearing, not only their ejection by Wonderland but also the possible suspension of their licenses was in issue. The plaintiffs' argument fails for at least two reasons. First, the plaintiffs were notified at the hearing that their licenses might be suspended, and they were given ample opportunity to be heard on that matter. See *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.,* 395 Mass. 836, 845 (1985). The commission chairman expressly stated to the plaintiffs' counsel at the hearing that the plaintiffs' "license status

could . . . be affected if we uphold the ejections of these people." He stated further, "What I'm saying is, based on the fact that this matter is before us, before this Commission makes any decision as to the status of these persons' licenses, we will make a determination as to their status as ejectees. And then at that point in time, depending on how that goes, we'll have to make a decision about licenses. But our own rules seem to require that a person ruled off for whatever reason should have their license suspended and/or revoked. That is something we're going to have to address." In response to counsel's inquiry whether "the suspensions as opposed to the ejections" would be addressed in writing, the chairman said, "It will be certainly included in our findings, conclusions, and orders." It is clear that the plaintiffs were on notice that the hearing could result in license suspensions.

The second reason that the plaintiffs' procedural due process and G. L. c. 30A notice arguments fail is that, even if notice was defective, the plaintiffs have demonstrated no prejudice. Only when "the substantial rights of [a] party may have been prejudiced" is reversal of agency action on account of defective notice warranted. *Aristocratic Restaurant* v. *Alcoholic Beverages Control Comm'n (No. 1),* 374 Mass. 547, 551 (1978).

We turn now to the defendants' cross appeal concerning Edward Ross. The commission upheld his ejection by Wonderland and suspended his license. The judge reversed because of "substantial doubt" that Ross had knowingly participated in the boycott. The judge concluded that the commission's findings as to Ross were not supported by "substantial evidence." Lack of substantial evidence warrants the reversal of an agency decision. G. L. c. 30A, § 14 (7) (e). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). We summarize the evidence before the commission in the next two paragraphs. We conclude that it reasonably supported the commission's findings. Since no defect appears in the commission's conclusions as to Ross, and since the commission, not the judge or this court, is the finder of fact, the commission's action with respect to Ross must be affirmed. *Labor Relations Comm'n* v. *University Hosp., Inc.,* 359 Mass. 516, 521 (1971).

The evidence before the commission that we conclude constituted substantial evidence in support of the commission's decision was as follows. Ross was a trainer responsible for weighing-in certain greyhounds for races, including schooling races, which are nonwagering races designed to acclimate the greyhounds to racing conditions at Wonderland. On May 31, 1985, Ross arrived at the Wonderland parking lot as other plaintiffs' trucks were leaving. One of the plaintiffs told him that the scheduled races had been cancelled. Although Ross knew it was highly unusual for the races to be cancelled on a Friday night in May, and the weather offered no reason for cancellation, he made no further inquiry about the races having been cancelled or the reason therefor, and he left the lot with four greyhounds scheduled to race that evening in schooling races. There also was evidence before the commission that, prior to the boycott, Ross had signed a letter directed to the commission threatening to use "other alternatives" if certain trainers' grievances with the commission's rules were not addressed, and that Ross knew on the night of the boycott that the trainers were unhappy with the situation at Wonderland. We conclude that there was substantial evidence supporting the commission's decision as to Ross, and that the judge erred in reversing it.

The judgment as to Ross is reversed, and the case is remanded to the Superior Court for the entry of a judgment affirming the commission's decision as to him. The judgment as to the other plaintiffs is affirmed.

*So ordered.*