SUPERIOR COURT 
 
 JANE DOE vs. DEPARTMENT OF CHILDREN AND FAMILIES and another[1]

 
 Docket:
 2284CV00704
 
 
 Dates:
 May 30, 2023
 
 
 Present:
 Katie C. Rayburn
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

       The plaintiff, Jane Doe ("Plaintiff '), initiated the present suit against the defendants, the Department of Children and Families and Linda Spears, in her official capacity as Commissioner of the Department of Children and Families (collectively the "DCF"),  alleging counts for certiorari review, violation of due process, and declaratory judgment. Plaintiff argues that DCF exceeded its statutory authority when it implemented an internal policy in June 2020 establishing a possible determination of "substantiated concern" following a G.L. c.119, § 51I3 investigation of suspected child abuse or neglect, alongside the existing possible determinations of "supported" and " unsupported". The parties have now cross-moved for judgment on the pleadings. For the reasons that follow, Plaintiff s motion is DENIED as to her count for certiorari review, ALLOWED as to her count for violation of due process, and DENIED as to her count of declaratory judgment. DCF's motion is ALLOWED as to Plaintiff s count for certiorari and otherwise DENIED.

A. STATUTORY AND REGULATORY FRAMEWORK

--------------------------------------------

[1] Linda Spears, in he r official capacity as Commissioner of the Department of Children and Families

-1-

      DCF is charged with investigating reports of suspected child abuse or neglect made pursuant to G. L. c. 119, § 5l A (5lA Reports). Upon receipt of a 5l A Report, DCF must immediately “screen such report" to "identify children at risk of abuse or neglect from a caretaker, and to distinguish the need for an emergency or non-emergency response." 110 Code Mass. Regs. § 4.21. If a report is screened as a non-emergency, DCF investigates the allegations pursuant to G. L. c. 119, § 51B and 110 Code Mass. Regs. § 4.27.

      The 2020 regulation in effect at the time of the events described herein provides that: "After completion of its 51B investigation, [DCF] shall make a determination as to whether the allegations in the report received are 'supported ' or ' unsupported."' 110 Code Mass. Regs. § 4.32(1) (2021). A supported report means that DCF found " reasonable cause to believe that an incident ... of abuse or neglect by a caretaker did occur." 110 Code Mass. Regs. § 4.32(2). On June 22, 2020, DCF revised its Protective Intake Policy to provide for a third possible determination: "substantiated concern." Sec Protective Intake Policy, 86-015, revised as of June 22, 2020 (AR27). Under this third possible option, DCF could determine that there was reasonable cause to believe that neglect by a caretaker occurred and that DCF intervention was needed. Sec id. The "substantiated concern" determination served as a middle ground between "supported" and "unsupported," but featured most of the characteristics of "supported"
determinations." Per the DCF's revised intake policy, the two differences between a "supported" determination and a "substantiated concern" determination were, firstly, that any finding of abuse- as opposed to neglect- would elevate a determination of "substantiated concern" to one of "supported," and, secondly, that on a determination of "supported," but not "substantiated concern," the caretaker is named to the DCF central registry. See id. Though the June 2020 revised intake policy allowed the "substantiated concern" determination, the 2020 regulation did

-2-

not provide for any possible determination other than "supported" or " unsupported".[2] See 110 Code Mass. Regs.§ 4.32(1) (2021).

      DCF has adopted regulations concerning rights to appeal DCF determinations and otherwise grieve DCF actions. See 110 Code Mass. Regs. §§ 10.01-10 .38. A party aggrieved by DCF's decision to "support" a 5lA Report may request an administrative hearing - cal led a "fair hearing " - to challenge the decision . See 110 Code Mass. Regs. § 10.06(11). At a DCF fair hearing, the appellant has the burden of proof to show by a preponderance of the evidence that DCF has not demonstrated there is reasonable cause to believe that a child was abused or neglected. Sec 110 Code Mass. Regs. § 10.23(d). The fair hearing procedure is quasi-judicial, involving discovery, motion practice, direct and cross examination of witnesses, presentation of evidence, and a final written decision by the hearing officer, among other things. See 110 Code Mass. Regs. § l 0.00 ct. seq. Contrasting this, a party aggrieved by a DC F determination of "substantiated concern" is not entitled to a fair hearing appeal, and instead must appeal the determination through the DCF' s grievance process, based on written submissions. See 110 Code Mass. Regs. § 10.38. Once an aggrieved party has exhausted their administrative remedies through the fair hearing process or the grievance process , they may seek judicial review of the final administrative decision.

B. FACTUAL BACKGROUND

      Plaintiff adopted her son (" Child") when he was three years old. He suffered from significant trauma prior to adoption which materialized in negative self-talk , self - harm, aggression, expulsion from daycare, and, at age seven, a suicide attempt. In 2019, Child witnessed Plaintiff being strangled by Plain tiff s then-husband. In October 2021, Child was

--------------------------------------------

[2] In January 2023, DCF adopted an amended 110 Code Mass. Regs. § 4.32 to allow a "substantiated concern" determination, in add it io n to supported and unsupported determinations. See 110 Code Mass. Regs. § 4.32 (2023).

-3-

hospitalized after his now-separated father sent Child videos showing him in bed with a woman. Child has been assisted by an in-home therapy team, and referrals have been made for a therapeutic mentor and trauma-informed behaviorist. Child is also being observed for pediatric and psychiatric ca re . He has been diagnosed with post-traumatic stress disorder, pervasive developmental disorder, reactive attachment disorder, dyslexia, sleep disorder, and chronic aggression.

      On December 29, 2021, Child reported to a school counselor that Plaintiff had slapped him in the face. Child reported that Plaintiff was hosting a sleepover for Child and Child' s friends, that Plaintiff learned that Child had slapped a friend at the sleepover and, in response, Plaintiff slapped Child in the face. Upon receiving the report of this incident, Child's school counselor file d a mandatory 51A Report with DCF. In response to the report, DCF conducted a 51B investigation. DCF interviewed Plaintiff, and Plaintiff acknowledged slapping Child after witnessing him hitting a friend. When the DCF investigator asked whether Plaintiff regularly hits Child as punishment for his behavior, Plaintiff shrugged.

      On January 11, 2022, DCF concluded its 51B investigation with a determination that there was a '·substantiated concern" of neglect. Such determination was in accordance with DCF's Protective Intake Policy, 86-015, revise d in 2020 to allow for a possible finding of "substantiated concern"  of neglect. In accordance with this finding, DCF concluded that it needed to intervene to safeguard Child ' s safety and wellbeing. In light of this conclusion, DCF's 5lB investigation report included an action plan to ensure Child's safety and wellbeing that involved Plaintiff engaging in support services and participating in therapeutic services to deal with her own past trauma.

-4-

      At some point thereafter, Plaintiff attempted to invoke the DCF fair hearing appeals process but was unsuccessful. Instead DCF notified Plaintiff this appeals process was not available for determination s of "substantiated concern" but that Plaintiff could instead grieve the determination. On January 18, 2022, Plaintiff file d a grievance of DCF' s determination that there was a "substantiated concern" of neglect. On January 31, 2022, DCF denied the grievance on Plaintiffs written submissions. DCF held no hearing on the matter.

      Because her grievance of DCF' s determination was denied, Plaintiff enacted the family action plan outlined by DCF. Plaintiff coordinated with a DCF response worker to conduct home visits, which occurred on January 27, 2022, February 3, 2022, March 3, 2022, and April 14, 2022. Following the last home visit, DCF determined that things between Plaintiff and Child were going well and that both were participating in the services provided. On April 15, 2022, DCF closed Plaintiff s case.

      Plaintiff hoped to be a foster parent to another child, but, at some point in the Fall of 2021, she learned from DCF that she would be ineligible to serve as a foster parent for twelve months after her case was closed. This is because the DCF' s determination of "substantiated concern" was recorded in the DCF's internal database, preventing approval of Plaintiff as a foster parent.[3]

      Plaintiff initiated the present action on March 31, 2022, alleging counts of certiorari under G.L. c. 249, § 4 (Count 1), violation of Due Process under both the Fourteenth

--------------------------------------------

[3] Pursuant to G.L. c. 119 , § 51 B(h), the allegations contained  in  the  initial  51A  Report  arc  recorded  in  an  internal DCF database. The allegations may be marked " allegation  invalid"  if they arc detem1ined  to be  unsubstantiated  . See also G.L. c. I 19, §  5  IF  ("  If  the department  determines  during  the  initial screening  period  of  an  investigation  that said report under section 51A is frivolous, or other absolute determination that abuse or neglect  has  not  taken  place  , then said report  shall  be  declared as " allegation  invalid".  If such reports arc declared " allegation  invalid", the  name of the child, or identifying characteristics re la ting to the child , or the names of  his  parents or guardian  or  any  other person relevant to the report,  shall  not  be  placed  in  the  central  registry,  nor  under  any  other  computerize d  program utilized in the department. Nothing in th is sec t ion shall prevent the department from keeping information on unsubstantiated reports to assist in future risk and safety assessments of children and families.").

-5-

Amendment to the United States Constitution and article 10 of the Massachusetts Declaration of Rights (Count 2), and Declaratory Judgment (Counts 3 and 4).

DISCUSSION

A. Certiorari Review

      Certiorari review under G.L. c. 249, § 4 "is a limited procedure reserved for correction of substantial errors of law apparent on the record created  before  a  judicial  or  quasi-judicial tribunal." Grandoit  v. Mass. Comm'n Against  Discrimination, 95  Mass. App. Ct. 603, 607 (2019), quoting School Comm. of Iludson v. Board of Educ., 448 Mass. 565, 575-576 (2007). To be entitled to certiorari review, a plaintiff must demonstrate three elements: "(l ) a judicial or quasi-judicial proceeding, (2) from  which  there is  no other reasonably  adequate  remedy,  and (3) a substantial injury or injustice arising from the proceeding under review." Id., quoting Indeck v. Clients' Sec. Rd., 450 Mass. 379, 385 (2008). Certiorari review is limited  to  making "a ruling of law that docs not require findings of fact, determination s of credibility, or the application of administrative expertise." Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016).

      It is not clear that any injury or injustice arose from the proceeding actually under review. Plain tiff argues that she suffered injury and injustice through DCF' s failure to provide a quasi- judicial fair bearing appeal of its "substantiated concern" determination . Though  it is  possible that such injustice arose-from the DCF's failure to provide such a hearing, that would not entail that an injustice arose from the proceeding actually under  review, specifically  Plaintiffs grievance of DCF' s " substantiated concern" determination. Plaintiff appears  to recognize  as much it her arguments, arguing that the failure of DCF to provide her with a quasi-judicial fair hearing resulted in injustice but not that her grievance was wrongly decided on its merits. Plaintiff has cited to no decision on certiorari where a similarly situated party prevailed when the

-6-

subject proceeding was one that should have been, but was not, provided. Decisions on certiorari generally involve review of a proceeding actually provided, not a hypothetical alternative. See, e.g., Nichols v. Chief of Police of Natick, 94 Mass. App. Ct. 739, 743-744 (2019) (certiorari review of district court judge' s decision following judicial proceeding); Figgs v. Bos. Hous. Auth., 469 Mass. 354,363 (2014) (certiorari review of hearing officer ' s decision following informal hearing); Foskett v. Mass. Interscholastic Ath. Ass'n, Nos. 145644, 2021 Mass. Super. LEXIS 7 at *5 (Jan. 22, 2021) (certiorari review of ERB board's decision following informal hearing). In light of the foregoing, Plaintiff did not suffer injury or injustice from the proceeding actually under  review-  the DCF's grievance  procedure-  so Plaintiffs claim for certiorari review fails.

B. Due Process

      Plaintiff argues that DCF 's failure to provide her a right to a fair hearing after its finding of "substantiated concern" violated her right to procedural due process under both the United States Constitution and the Massachusetts Declaration of Rights. The Due Process clause of the Fourteenth Amendment to the United States Constitution protects against deprivations of interests in " life, liberty or property , without due process of law. " Though article 10 of the Massachusetts Declaration of Rights may afford greater protection of rights than the Fourteenth Amendment, Massachusetts courts review due process challenges under both authorities using the same analysis. Gillespie v. Northampton, 460 Mass. 148, 153 n.12 (2011).

       A determination of procedural due process requirements in a particular context calls for the balancing of (1) the private interest affected by the official action; (2) "the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the governmental interest, "including

-7-

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Duarte v. Commissioner of Revenue, 451 Mass. 399, 412 (2008), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." Matter of Kenney, 399 Mass. 431, 435 (1987).

1. Private Interest Affected

      Plaintiff asserts that the private right affected by DCF's determination of "substantiated concern" was her right to freedom of personal choice in matters of family life. Massachusetts courts have repeatedly held that a parent has a protected liberty interest in their care , custody, and management of their child. See Adoption of Luc, 484 Mass. 139, 152 (2020) ("A parent' s
' fundamental liberty interest in the  care, custody, and management  of their children'  is

axiomatic."), quoting L.B. v. Chief Justice of the Probate & Family Court Dep't, 474 Mass. 231, 237 (2016); Youmans v. Ramos, 429 Mass. 774, 784 (1999) ("The liberty interest of a parent in his relationship with his chi ld is fundamental."); Duro v. Duro, 392 Mass. 574, 580 (1984) ("[F]undamental fairness, as well as due process concerns, requires that a parent be given the opportunity effectively to rebut adverse allegations concerning his or her child- rearing capabilities.'} Here, too, Plaintiff had a protected liberty interest in the care, custody, and management of her Child.

2. Risk of Erroneous Deprivation

      The court next look s to the risk of erroneous deprivation of Plaintiffs right to be free from government intrusion into her family life and the probable value, if any, of additional procedural safeguards. See Duarte, 451 Mass. at 412, quoting Eldridge, 424 U.S. at 335.

-8-

      There is a substantial risk of erroneous deprivation of parents' rights absent the ability to meaningfully challenge unfavorable 51A Report determinations. In 2020, over 50% (505 of943) of the "supported" determinations by DCF were overturned following a fair hearing. See 2020 Legislative Report on Fair Hearings in the Department of Children and Families (https://www.mass.gov/doc/fy2020-fair-hcarin g-report/download) at 7 (" Of the cases open in FY20, the Fair Hearing Office issued 407 decisions which affirmed the Department's decision, 31 decisions which partially reversed the Department's decision and 505 decisions that reversed the Department's decision. ") . Stated differently, more than half of the DCF's initial “supported" determinations were wrong. There is no obvious reason that the DCF' s determinations of "substantiated concern" would be any more accurate than its "supported" determinations. As such, there is a great risk that DCF will make "substantiate concern" determination s which would be more likely than not to be overturned on a quasi-judicial appeal proceeding.

      Further, quasi-judicial procedural safeguards- such as those of the fair hearing proceedings outlined at 110 Code Mass. Regs. 10.00 et. seq.- protect against the risk of erroneous deprivation and effectuate resolution of cases on their merits. On a fair hearing proceeding, a party may subpoena witnesses and documents . Sec 110 Code. Mass. Regs. 10.13. They may conduct discovery. See 110 Code. Mass. Regs. 10.14. They may engage in motion practice. 110 Code. Mass. Regs. l 0.15. Witnesses testimony is given under oath. 110 Code. Mass. Regs.  I 0.20. The  hearing examiner takes  and  evaluates evidence,  110 Code.  Mass.  Regs. l 0.21, and ensures that each side has a "full opportunity to present their claims," l10 Code. Mass. Regs. I 0.20(3). These tools highlight the underlying issues of a case and encourage resolution on the merits, and their value is self-evident. More significantly, the fact that the fair

-9-

hearing procedure resulted in overturning over 50% of the "supported" dctem1inations of2020 demonstrates the quasi-judicial hearing' s efficiency at piercing to the heart of a dispute. The fair hearing procedural safeguards make it more likely that the resolution of a DCF determination appeal will be based on the merit s. Without a quasi-judicial proceeding, there is a great risk of erroneous deprivation.

      Courts have suggested that greater due process protections than those offered Plaintiff in this case arc required to protect interests arguably less substantial than Plaintiffs interest in her parental relationship with Child. Sec Konstantopoulos v. Whately, 384 Mass. 123, 137 (198 1) ("[D]ue process would require notice and a hearing before revocation if the plaintiff in fact held an entertainment license, but exceeded the terms of the license. "); Memphis Light, Gas & Water Div. v. Craft. 436 U.S. 1, 20 (1978) (suggesting " some kind of hearing" required prior to electrical utility shutoff); Goldberg v. Kelly, 397 U.S. 254,264 (1970) (reasoning procedural due process requires a hearing before discontinuing public assistance payments); Haidak v. Univ. of Mass.-Amherst , 933 F.3d 56, 66 (1st Cir. 2019) (opportunity to be heard at "some kind of hearing" required in school disciplinary context) (emphasis in original). Th is consideration further weighs in Plaintiffs favor.

3. Govern mental Interest

      Finally, courts balance the interests of the government against those of the individual. See Duarte, 451 Mass. at 412. The Commonwealth, as parens patriae, has a strong interest in the welfare of the children of the Commonwealth. See Care & Prot. of Robert, 408 Mass. 52, 65-66 (1990), citing Lassiter v. Department of Social Servs. of Durham County , NC, 452 U.S. 18, 27 (1981); Petition of the Dep 't of Pub. Welfare to Dispense with Consent to Adoption , 383 Mass. 573, 587 (198 I) ("The State as parens patriac may act to protect minor children from serious

-10-

physical or emotional harm"). The Commonwealth 's interest, therefore, extends initially to the maintenance of a stable family environment and, if this is not present, to the provision of adequate care and protection for the child. Care & Prof. of Robert, 408 Mass. 52, 65-66 (1990). Here, there can be no doubt that the government has a substantial interest in the protection of minor children from serious physical or emotional harm.

      Courts also consider the fiscal and administrative burdens that "additional or substitute procedural requirement would entail." Sec Duarte, 451 Mass. at 412, quoting Eldridge, 424 U.S. at 335. Undoubted ly, a quasi-judicial hearing entails greater expense than grievance proceedings, flowing from the various procedural safeguards which make it more likely that such a hearing will resolve a case on its merits. However, the fact that DCF consistently app lies one form of quasi-judicial proceeding-   the fair hearing procedure for appeals of "supported" determinations demonstrates that the use of such a quasi-judicial proceeding is, apparently, fiscally and administratively tenable and that DCF possesses the personnel, expertise, and resource s to hold such quasi-judicial proceedings.[4] Likewise, some amount of DCF' s "substantiated concern" cases would undoubtedly have been determined to be "supported " cases prior to the revised June 2020 policy, entailing a fair hearing appeal in those instance s. Allowance of such quasi-judicial appeals was thus, apparent ly, administratively tenable.

4. Conclusion

--------------------------------------------------------------

[4] Presumably , prior to the DCF's implementation of its June 2020 intake policy, D C F cases which could have been subject to "substantiated concern" determinations after June 2020 were determined to be "supported," entailing the possibility of a fair hearing appeal for those cases prior to June 2020. As such, it would appear that DCF has the personnel, resources, and expertise to entitle t hose affected by "substantiated concern" determinations to a form of quasi-judicial appeal procedure. The court also recognizes that the DCF's implementation of its "substantiated concern" policy may have arise n from a lack of sufficient personnel, resources, or expertise  to offer fair hearing appeals to even lesser " supported" cases, such as tho se later deemed "substantiated concern" cases. The  DCF does not address such an argument in its papers.

-11-

      Considering all of the foregoing, the DCF violated Plaintiff s right to due process when it only provided her with a grievance appeal of its " substantiated concern" determination. Plaintiff had a substantial liberty interest in her parental relationship with Child, which was threatened by DCF through its "substantiated concern" determination. As more than half of the DCF's "supported" determinations were overturned on appeal as recently as 2020, there can be little doubt that there was a substantial risk of erroneous deprivation to Plaintiff when DCF made its "substantiated concern" determination. Finally, the Commonwealth has a substantial interest in the physical and mental wellbeing of its minor children, but the fact that the DCF actually offers a meaningful  hearing procedure-  the fair hearing  process-demonstrates that the implementation of such additional procedural safeguards docs not impose too great an administrative burden on the DCF. DCF violated Plaintiff s right to due process when it failed to provide her with a meaningful appeal process of its determination of "substantiated concern."

C. Declaratory Judgment

      Declaratory relief may be invoked to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official, "even though the act ion concerns neither adjudication nor rule making." Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991); G.L. c. 231A, § 1.

1. Mootness

      To secure declaratory relief in a case involving administrative action, a plaintiff must show, among other things, that there is an actual controversy between the parties. Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs, 410 Mass. 100, 106 (1991); G.L. c. 231A, § 1. ''An actual controversy arises under our law where there is 'a real dispute caused by the assertion by one party of a legal relation, status or right in which [that party] has a definite

-12-

interest , and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is [adjudicated] such antagonistic claims will almost immediately and inevitably lead to litigation." ' Worcester Reg'! Rel. Bd. v. Pub. Emp.  Rel. Admin. Comm'n , 489 Mass. 94, 98 (2022), quoting Libertarian Ass'n of Mass. v. Secretary of the Commonwealth, 462 Mass. 538, 546-547 (2012). Controversy is properly shown where both parties assert a definite interest in the meaning of the statute, in circumstances clearly showing that " such antagonistic claims will almost immediately and inevitably lead to litigation." Id., quoting Libertarian Ass'n of Mass., 462 Mass. at 547.

      The DCF asserts that there is no actual controversy before the court because Plaintiff s case was closed in April 2022. Plaintiff responds that as a  result of DCF's "substantiated concern" determination, Plaintiff cannot serve as a foster parent until twelve months after April 2022.[5] Though Plaintiff diligently pursued the claim s in this matter , more than twelve months have now passed since DCF's "substantiated concern" case against Plaintiff was closed, meaning Plaintiff will not be prevented from serving as a foster parent by the DCF' s past determination as of this writing. No actual controversy presently exists.

      Nonetheless, even where no actual controversy remains, review on declaratory judgment "may be appropriate where the issue is one of public importance and was fully argued on both sides; where the question is certain, or at least very like ly, to arise again in similar factual circumstances; and where appellate review could not be obtained before the recurring question again would be moot." DiMasi v. Sec'y of the Commonwealth, 491 Mass. 186, 190 (2023), citing

--------------------------------------------

[5] The parties file d the ir cross-motions for judgment o n the pleadings on October 31, 2022. A hearing on the parties' motions was held on February 8, 2023. Plaintiffs motion for judgment on the pleadings is dated Jul 29 , 2022 . Through no fault of the parties, more than twelve months have now elapse d since DCF ' s " substantiated concern" cases against Plaintiff was closed.

-13-

Lockhart v. Attorney Gen., 390 Mass. 780, 783 (1984). In essence, courts look to whether the issue is "capable of repetition, yet evad[es] review". Id., quoting First Nat'/ Bank of Boston v. Haufler, 377 Mass. 209, 211 (1979). "An issue apt to evade review is one which tends to arise only in circumstances that create a substantial likelihood of mootness prior to completion of the appellate process." Id.

      Here, though no actual controversy remains, the issue before the court is of public importance, has been fully briefed and argued, is capable of repetition, and is likely to evade review in the future. In 2021, DCf made 7,929 "substantiated concern" determinations . See Mass. Dep't of Children and Families, Annual Report, FY 2021, at 42 (https://www.mass.gov/ doc/dcf-annual-reportfy2021 /download). In 2022, DCF made 6,806 "substantiated concern" determinations. See Mass. Dep' t of Children and Families, Annual Report, FY 2022, at 42 (https://www.mass.gov/doc/fy-2022/download). Undoubtedly, a number of "substantiated concern" cases were opened or remained open after May 2022, creating the possibility that the issues raised by Plaintiff in this matter will be raised again in the future. And, as with Plaintiff' s case, similar cases raised in the future are likely to evade review---on mootness grounds–due to delays within the court system. Thus, though no actual controversy remains, review on declaratory judgment is appropriate. Sec DiMasi, 491 Mass. at 190.

2. Review of Agency Action

      The final issue before the court is whether DCF possessed authority to adopt its June 2020 "substantiated concern" internal intake policy, establishing a third possible determination other than "supported" or "unsupported" upon a 5113 investigation. Declaratory judgment is the appropriate mechanism through which to raise such concern. See Williams v. Secretary of the Executive Office of Human Servs., 414 Mass. 551, 567 n. 10 (1993) (declaratory relief " is an

-14-

appropriate route by which to challenge an administrative agency ' s noncompliance with its statutory mandate"). Agencies gene rally may not implement formal regulations without first complying with appropriate rulemaking procedures. See Tr. Ins. Co. v. Commonwealth Auto. Reinsurers, 46 Mass. App. Ct. 657, 661-662 (1999 ) (recognizing "judicial and legislative reluctance to allow a statutorily created body ' to impose binding rules which materially affect rights or liabilities without an opportunity to gain the benefit of the view s of the parti es affected."' ), quoting Tinkham v. Department of Pub. Welfare, 11 Mass. App. Ct. 505, 513 (1981).

The legislature has provided that:

(5) "Regulation" include s the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it, but docs not include ... (b) regulation s concerning only the internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities....

G.L. ch. 30A, § 1(5) (emphasis added). Thus,  the  question  before  the  court  is  whether  DCF' s internal intake policy concerned "only the internal management or discipline of the [DC F)" or, conversely  ,  whether  the policy "substantially affected]   the   rights  of  or  the  procedures available to the public or that portion of the public affected by the [DCF ' s] activities" . See G.L. ch. 30A, § 1(5). If the former is true, then the policy was not a regulation. If the latter, the policy was a regulation. If the policy was actually a regulation , it was improperly adopted without either public hearing, sec G.L. c. 30A, § 2, or notice and comment, sec G.L. c. 30A, § 3. 

      Courts look to several factors to determine whether an agency policy is truly an internal policy or actually a disguised regulation. Firstly, courts look to whether the policy is a rule of
"general application" intended to inaugurate a material change of policy or only to clarify

-15-

requirements of an established policy. Sec Massachusetts Gen. Hosp. v. Rate Selling Comm'n, 371 Mass. 705, 707 (1977). Secondly, courts look to whether the writing has " broad or pervasive coverage." id.  The plain language of G.L. c. 30A, § 1(5) also provides guidance, directing a court reviewing an agency policy to discern the general character of the policy. See G.L. c. 30A, § 1(5).

      To begin, the DCF' s June 2020 policy, allowing for a "substantiated concern" determination, plainly inaugurated a material change in DCF policy. DCF' s own regulations previously-  prior  to the June 2020 revised policy-  provided for only two possible determinations of the allegations of a 5l A Report: "supported" or " unsupported". See 110 Code Mass. Regs. § 4.32( I) (2020) ("After completion of its 5113 investigation, the Department shall make a determination as to whether the allegations in the report received are ' supported' or ' unsupported' ."). The June 2020 revised policy was not intended to clarify any existing internal policy or guidelines concerning "substantiated concern" determinations. Cf. Commonwealth v. Trumble, 396 Mass. 81, 89 (1985) (roadblock guide lines not regulations where they only concerned the internal management of the state police department); see also Leach v. Commissioner of the Mass. Rehabilitation Comm'n, 63 Mass. App. Ct. 563, 567 (2005) (internal guidelines promulgated by MCAD arc persuasive, but not binding, interpretive assistance concerning employer's obligations to employees). DCF' s addition of a third possible determination concerning allegations of child abuse or neglect was a material change to its previously-existing regulatory framework.

      The second factor also weighs towards the policy being a regulation. DCF's addition of the "substantiated concern" determination had broad, pervasive coverage, applying to nearly 15,000 51A Reports between 2020 and 2022. See Mass. Dep' t of Children and families, Annual

-16-

Report, FY 2021 , at 42 (https: //www.mass.gov/doc/dcf-annual-re po rtfy202I /download) (7,929 "substantiated concern" determinations); Mass. Dep' t of Children and Families, Annual Report, FY 2022, at 42 (https://www.mass.gov/doc/fy-2022/download) (6,806 " substantiated concern" determinations). The policy thus had broad, pervasive coverage. Sec Massachusetts Gen. Hosp., 371 Mass. at 707; see also  Tr. Ins. Co. v. Commonwealth  Auto .  Reinsurers, 46 Mass. App. Ct. 657, 662 (1999) (guidelines applicable to all over- and under-subscribed motor vehicle insurers and all insurance agent associations was a regulation requiring formal rulemaking).

      Finally, the considerations outlined at G.L. c. 30A, § 1(5) weigh in favor of the June 2020 policy constituting a regulation. DCF' s new , " substantiated concern" determination did not concern only the internal management or discipline of the DCF but instead affected the parental rights of thousands of individuals, and, through categorizing cases that may otherwise have been deemed "supported" as cases with "substantiated concern," DCF deprived thousands of individuals of their ability to contest DCF's determination through a quasi-judicial appeals procedure. DCF' s "substantiated concern" policy was not an internal policy but a regulation implemented without the requisite rulemaking.

CONCLUSION

      For the foregoing reasons, IT IS HEREBY ORDERED THAT:

      (1) Plaintiff s motion for judgment on the pleadings is DENIED as to Count 1 for Certiorari Review, and DCF' s cross-motion for judgment on the pleadings is ALLOWED as to Count l ;

      (2) Plaintiff' s motion for judgment on the plea dings is ALLOWED as to Count 2 for violation of due process, and DCF' s cross-mot ion for judgment on the pleadings is DENIED as to Count 2;

-17-

      (3) Plaintiffs motion for judgment on the pleadings is ALLOWED as to Counts 3 and 4 for declaratory judgment, and DCF' s cross-motion for judgment on the pleadings is DENIED as to Counts 3 and 4; and

      (4) A declaration shall enter declaring that: DCF's practice of imposing a "substantiated concern" determination, as outlined in its Protective Intake Policy, 86-015, revised as of June 22, 2020, is invalid and ultra vires.

@/s/Katie C. Rayburn
Associate Justice of the Superior Court

@May 30, 2023

xxz